JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-defendant, Willie Green, appeals a judgment of the Cuyahoga County Court of Common Pleas, finding him guilty of driving under the influence ("DUI"), in violation of R.C. 4511.19.
 {¶ 2} On January 3, 2006, Green was indicted by a Cuyahoga County Grand Jury for DUI, in violation of R.C. 4511.19, with specifications for five prior convictions under the same statute. He entered a plea of not guilty at his arraignment.
 {¶ 3} On March 28, 2006, Green filed a motion to suppress evidence, contending that his Fourth Amendment rights were violated because the initial stop was unjustified. The trial court held a hearing on the motion on April 3, 2006, *Page 2 
immediately prior to the bench trial. After hearing evidence on the motion to suppress, the trial court denied it.[1]
 {¶ 4} In its case in chief, the state presented Shawn Prementine, a paramedic for the city of Cleveland's EMS unit, as its first witness. He testified that on June 27, 2005, while on duty around 9:00 p.m., he was stationed at the Gordon Park Marina. He observed a maroon Ford truck with a boat trailer strike a second boat trailer that was parked in another parking spot. He also saw part of one of the trailers break off when the two collided. Prementine stated that he got out of his ambulance to examine the damage, and then called the dispatch center to notify a park ranger that an accident had occurred.
 {¶ 5} Prementine indicated that while he was waiting for a park ranger to arrive, he stood outside his ambulance and watched the maroon truck to make sure that it did not leave the scene of the accident. When the ranger arrived, Prementine identified the truck to the ranger.
 {¶ 6} On cross-examination, Prementine stated that when the maroon truck hit the other trailer with its trailer, it was not traveling erratically or at a fast speed. *Page 3 
 {¶ 7} Next, the state presented Kevin Erskine ("Officer Erskine"), a park officer for the state of Ohio, Department of Natural Resources. He stated that he was on general patrol duty on the day in question. He indicated that he received a call from an EMS dispatcher, advising him that there was a paramedic near the boat ramps at East 72nd Street who had witnessed an accident. He responded to the scene and spoke with Prementine.
 {¶ 8} Officer Erskine stated that Prementine informed him that he witnessed a vehicle with a trailer back into and strike another trailer. Prementine showed him the damage, and that there was a broken taillight from the parked trailer in the parking lot and further identified the suspect vehicle to him.
 {¶ 9} According to Officer Erskine, while Prementine was giving him information about the accident, the maroon truck, which Prementine had identified, was in the process of pulling a boat out of the water at the boat ramp. As the maroon truck began to pull away with the boat, Officer Erskine got back into his patrol car, drove approximately thirty to forty feet, activated his overhead lights, and initiated a traffic stop of the truck.
 {¶ 10} Officer Erskine testified that he approached the truck and asked the driver for his license. He then identified Green in court as the driver of the truck. He immediately "sensed a strong odor of alcohol" on Green's breath and asked him if *Page 4 
he had been drinking. Green replied that he had been drinking beer while on his boat.
 {¶ 11} Officer Erskine stated that he then asked Green why he had not stopped when he hit the other trailer. Green replied that he knew he had hit something, but was not sure what. At that time, Officer Erskine received information from his dispatcher that Green's driver's license was suspended. He then asked Green to step out of his vehicle. He stated that he initiated field sobriety tests because of the strong odor of alcohol on Green's breath, the fact that Green had admitted to drinking, and he had bloodshot and watery eyes.
 {¶ 12} Officer Erskine asked Green to submit to "the one-leg balance test, the walk and turn and the ABC's." He described to the trial court how the tests should be conducted and then explained that he instructed Green on how to perform the tests. Officer Erskine said: "[Green] wasn't able to complete the ABC's and jumbled several letters around. The one-leg balance test, he was only able to go up to a certain number before putting his foot down and losing his balance. And he was unable to walk a straight line on the walk and turn."
 {¶ 13} Officer Erskine further explained that during the one-leg balance test, Green put his right leg down after seven seconds. The test required Green "to stand *Page 5 
with feet together, and then lift one foot off the ground, and count out loud: one, one thousand, two one thousand, three one thousand, all the way up to thirty, without using his arms to balance, without putting his foot down to keep his balance."
 {¶ 14} As for the walk-and-turn test, Officer Erskine indicated that Green was unable to walk in a straight line "without using his arms to balance, and he was unable to stay on the line." He further explained that Green staggered somewhat and could not walk toe to toe directly on the line.
 {¶ 15} With respect to the alphabet test, Officer Erskine stated that Green said that he knew his ABC's, but that when he began to recite them, "he got to approximately the letter Q, and he started jumbling the letters, and he was not saying them in order." He also characterized Green's speech as "[s]omewhat slurred," but did not clarify when he noticed it to be slurred; i.e., only during the alphabet test or prior to it.
 {¶ 16} After Green failed the field sobriety tests, Officer Erskine placed Green under arrest and took him to the park office. He testified that he never read Green his Miranda rights.
 {¶ 17} On cross-examination, Officer Erskine agreed that Green was not driving at a high rate of speed when he drove past him with the boat on the trailer, *Page 6 
nor was he driving in an unusual way. He further admitted that he never took any notes as to how he administered the sobriety tests, nor could he remember what letters of the alphabet Green had jumbled. He also did not write anything in his report about the walk-and-turn test, except that Green could not complete it. He then clarified that Green's speech was slurred in general, not just in relation to the alphabet test. Officer Erskine also agreed he never asked Green how much he had to drink.
 {¶ 18} Finally, the state presented Joseph Soukup ("Officer Soukup), also a park officer and a supervisor. He assisted Officer Erskine with Green's arrest. He took pictures of the trailer that Green hit, as well as the broken taillight, and identified the pictures in court. He also stated that when he observed Green in the park office, Green had bloodshot, watery eyes, there was an odor of alcohol on his breath every time he spoke, and he spoke with a slight slur.
 {¶ 19} Officer Soukup explained that he showed Green the Bureau of Motor Vehicle Form 2255 (which informs offenders of the consequences of refusing the breathalyzer), read it to him, and asked him to submit to a breathalyzer, which Green then refused. Green also refused to sign Form 2255. *Page 7 
 {¶ 20} Green then took the stand in his own defense. He stated that on June 27, 2005, he took five neighborhood children fishing for a couple of hours. He testified that when he saw that he was being stopped, he got out of his vehicle and the officer said to him, "sir, do you have a driver's license?" He explained to the officer that he did not have a license, but that he had a state identification card because his license was suspended.
 {¶ 21} According to Green, when the officer returned from his vehicle, he asked him, "do you know you have a warrant for your arrest?" Green then explained that he tried to tell the officer that the warrant was "null and void" because he had "straighten[ed] that out."
 {¶ 22} Green stated that when the officer told him that he smelled alcohol, he explained to the officer that the smell was coming from his truck, because he collects cans off the street to take to the scrap yard for money. Green then said that the officer did not believe him and replied, "I will give you a [b]reathalyzer then." Green told him that he was not going to go through "all of that."
 {¶ 23} Green further testified that the officer asked him to walk in a straight line and say his ABC's. Green told the officer that he could not say his ABC's because he was "kind of illiterate." Green also said that when Officer Soukup asked him to *Page 8 
read Form 2255, he told him that he could not read without his glasses. Green stated, "[a]nything that I can't read, you know, I am not going to sign."
 {¶ 24} On cross-examination, Green denied that he was ever aware of hitting something. He also said that the officer never told him that he hit something or gave him a reason for stopping him. In addition, he denied that he had ever admitted to Erskine that he had been drinking beer that day, and further denied that he had any beer that day.
 {¶ 25} On April 4, 2006, the trial court found Green guilty of driving while under the influence of alcohol or drugs, a felony of the third degree, with five prior specifications. It then referred him to the probation department for a presentence investigation.
 {¶ 26} On May 15, 2006, the trial court sentenced Green to one year in prison, and three years of mandatory post-release control. In addition, the trial court ordered that Green complete sixty days of a certified treatment program in prison and suspended his driving privileges for ten years, until May 15, 2016. Green was further ordered to pay a fine of $2,000.
 {¶ 27} It is from this judgment that Green appeals, raising the following four assignments of error:
 {¶ 28} "[1.] Appellant was improperly convicted of a crime that no longer *Page 9 
existed at the time of the offense.
 {¶ 29} "[2.] Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and theSixth and Fourteenth Amendments to the United States Constitution when counsel failed to challenge the improper field sobriety tests and statements by Appellant.
 {¶ 30} "[3.] The state failed to present sufficient evidence that Appellant committed this crime.
 {¶ 31} "[4.] Appellant's conviction is against the manifest weight of the evidence."
 {¶ 32} In his first assignment of error, Green argues that he was improperly convicted of a crime that no longer existed at the time of the offense. He contends that because R.C. 4511.19 was amended on January 1, 2004, replacing the language of DUI (driving under the influence) with OVI (operating a vehicle under the influence), that he was convicted of a law that no longer exists. We disagree.
 {¶ 33} The indictment charging Green stated that it was a true bill indictment for "driving under the influence R.C. 4511.19." It further provided that the grand jurors found that Green unlawfully "did operate a vehicle within this state while under the influence of alcohol and/or drug of abuse." The indictment also included *Page 10 
specifications of five prior convictions for DUI under R.C. 4511.19.
 {¶ 34} First, the elements of the crime which Green was charged with and convicted of, R.C. 4511.19(A)(1)(a), did not change.[2] Prior to the amendment, R.C. 4511.19(A)(1)(a) contained the same language as it does now: "[n]o person shall operate any vehicle * * * if * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."[3]
 {¶ 35} It is well established that the "primary purpose of the charging instrument in a criminal prosecution is to inform the accused of the nature of the offense with which he or she is charged." Akron v.Holland Oil Co. (2001), 146 Ohio App.3d 298, 302-303. Green does not contend that the defect in the charging instrument caused him in any way to be unable to prepare for trial.
 {¶ 36} "Technical defects in indictments which do not affect the defendant's substantial rights or prejudice his defense do not present a claim of deprivation of the rights of an accused under the United States Constitution." State v. Reimsnyder *Page 11 
(Dec. 30, 1994), 6th Dist. No. E-93-71, 1994 Ohio App. LEXIS 6112, at 12. In the case at bar, Green has failed to demonstrate how the indictment's defect, identifying the offense as DUI, rather than OVI, affected his substantial rights or prejudiced him in any way.
 {¶ 37} Accordingly, we conclude that any defect in the indictment was harmless. Crim.R. 52(A) defines harmless error as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[.]" Pursuant to Crim.R. 52(A), harmless errors shall be disregarded.
 {¶ 38} Moreover, Crim.R. 12(C)(2) provides that any defect in the indictment must be raised in a pretrial motion prior to trial. If not, the defense or objection is waived by the defendant. Green did not raise this issue in a pretrial motion. Thus, he has waived this argument for purposes of appeal.
 {¶ 39} Green was convicted of exactly what he was charged with in the indictment, operating a vehicle while under the influence of alcohol. R.C. 4511.19(A)(1)(a). Therefore, he was not convicted of a crime that does not exist, contrary to his assertion. Green's first assignment of error is without merit. *Page 12 
 {¶ 40} In his second assignment of error, Green contends that he was denied effective assistance of counsel because his trial counsel did not move to suppress the improper field sobriety tests and statements made by him.
 {¶ 41} In Strickland v. Washington (1984), 466 U.S. 668, the Supreme Court of the United States set forth the two-pronged test for ineffective assistance of counsel. It requires that the defendant show (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. The first prong "requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The second prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." Id.
 {¶ 42} It is presumed that a properly licensed attorney in the state of Ohio has rendered effective assistance of counsel to a criminal defendant. State v. Hurd, 11th Dist. No. 2001-T-0086, 2002-Ohio-7163, at ¶ 32. With respect to a motion to suppress, the defendant must establish that the motion was meritorious and that he suffered actual prejudice.State v. Gower, 2d Dist. No. 1616, 2003-Ohio-5403, at ¶ 12. *Page 13 
 {¶ 43} Green's assertion that he received ineffective assistance of counsel is twofold. First, he maintains that his trial counsel should have moved to suppress the results of the field sobriety tests since they were not administered in substantial compliance with the National Highway Traffic Safety Administration's ("NHTSA") standards.
 {¶ 44} At the motion to suppress hearing, Green's counsel argued only that Officer Erskine did not have probable cause to stop him. There was no mention of field sobriety tests. At trial, the state did not present any evidence whatsoever to show that the field sobriety tests were conducted in substantial compliance with NHTSA standards. None of the witnesses testified as to these guidelines, and the state did not introduce the NHTSA manual regarding the tests.
 {¶ 45} In Gates Mills v. Mace, 8th Dist. No. 84826, 2005-Ohio-2191, this court held: "[a]lthough the City introduced evidence as to which tests were conducted and how they were conducted, it did not introduce any evidence to prove that the tests were conducted in compliance with the NHTSA guidelines for the tests. Because the City did not do so, the results of the field sobriety tests should have been suppressed." Id. at ¶ 26. *Page 14 
 {¶ 46} In the case at bar, just as in Mace, the state did present Officer Erskine's testimony as to which tests were conducted and how they were conducted. However, no evidence was introduced to prove that these tests were conducted in compliance with the NHTSA guidelines. Thus, as this court held in Mace, the results of the standardized field sobriety tests would have been suppressed had Green's counsel moved to suppress them.
 {¶ 47} Nevertheless, "`the totality of the facts and circumstances can support a finding of probable cause to arrest, even where no field sobriety tests were administered, or where, as here the standardized test results must be excluded (* * *).'" Id. at ¶ 27. Thus, if we determine that Officer Erskine had probable cause to arrest Green absent the results of the tests, then Green would not have suffered any prejudice because his counsel did not move the trial court to suppress the test results.
 {¶ 48} In State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, the question presented was whether an officer's observations may be admitted regarding a "`defendant's performance of nonscientific standardized field sobriety tests when those tests are not administered in [substantial] compliance with [NHTSA] Guidelines?'" The Supreme Court of Ohio held that an officer's observations *Page 15 
regarding a defendant's performance on nonscientific field sobriety tests is admissible as lay evidence of intoxication. Id. at ¶ 12-15 (superceded by statute on other grounds). "The manner in which a defendant performs these tests may easily reveal to the average lay person whether the individual is intoxicated." Id. at Tf14. The Supreme Court reasoned, "[w]e see no reason to treat an officer's testimony regarding the defendant's performance on a nonscientific field sobriety test any differently from his testimony addressing other indicia of intoxication, such as slurred speech, bloodshot eyes, and odor of alcohol." Id.
 {¶ 49} The high court further reasoned, "[u]nlike actual test results, which may be tainted, the officer's testimony is based upon his or her firsthand observation of the defendant's conduct and appearance. Such testimony is being offered to assist the [trier of fact] in determining a fact in issue, i.e., whether a defendant was driving while intoxicated. Moreover, defense counsel [has] the opportunity to cross-examine the officer to point out any inaccuracies and weaknesses. We conclude that an officer's observations in these circumstances are permissible lay testimony under Evid.R. 701. * * *" Id. at ¶ 15.
 {¶ 50} In the case sub judice, even assuming Officer Erskine did not substantially comply with NHTSA standards, and the test results of the field sobriety *Page 16 
tests had to be excluded (only the walk-and-turn test and the one-leg balance tests are recognized by NHTSA), his observations regarding Green's performance of these tests, as well as the alphabet recitation test, were admissible and could be considered by the trier of fact.
 {¶ 51} Officer Erskine testified that he had nearly twenty years experience in law enforcement. He further indicated that he had dealt with intoxicated people many times. Officer Erskine had been informed by Prementine, a reliable informant, that Green had hit another trailer with his trailer while he was backing out of a parking spot, and did not stop to investigate it. According to Officer Erskine, Green also admitted that he was aware that he had hit something, but was not sure what. Green gave no explanation why he did not stop after hitting the trailer.
 {¶ 52} Officer Erskine also testified that he smelled a strong odor of alcohol on Green's breath, and that Green admitted to him that he had been drinking. Officer Erskine observed that Green had bloodshot, watery eyes, and his speech was slurred. These observations supported a reasonable suspicion to further investigate whether Green was intoxicated by initiating field sobriety testing.
 {¶ 53} As we stated previously, Officer Erskine's observations regarding Green's performance of the field sobriety tests were admissible. Officer Erskine *Page 17 
testified, inter alia, that Green jumbled the letters of the alphabet, staggered when he attempted to walk on a straight line, and could not hold his balance for the one-leg test. Thus, we conclude that there was competent, credible evidence presented from Officer Erskine, a highly experienced law enforcement officer, that Green was intoxicated. This evidence amounted to probable cause to justify arrest.
 {¶ 54} Thus, under the first prong of Strickland, Green's counsel should have moved the court to suppress the results of the standardized field sobriety tests. However, Green does not meet the second prong, since there was sufficient evidence of probable cause to arrest him for operating a vehicle under the influence of alcohol, and as such, he was not prejudiced by his counsel not moving to suppress the results.
 {¶ 55} Green further contends in his second assignment of error that his counsel was ineffective because he did not move to suppress custodial statements made by him. We disagree.
 {¶ 56} The procedural safeguards identified in Miranda, which protect against the privilege of self-incrimination, apply only when one is subjected to custodial interrogation. Miranda v. Arizona (1966),384 U.S. 436, 478-479. Custodial interrogation is "`questioning initiated by law enforcement officers after a person has *Page 18 
been taken into custody or otherwise deprived of his freedom of action in any significant way.'" State v. Roberts (1987), 32 Ohio St.3d 225,226, quoting Miranda at 444. However, persons temporarily detained by police in the course of an investigative stop, including "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process[,]" are not "in custody" for purposes of Miranda and deprived of their constitutional rights. Id. at 477-478.
 {¶ 57} After applying these standards to the existing record, we do not agree that Green was in custody when he made incriminating statements. According to Officer Erskine, Green admitted at the scene to drinking while on his boat. He further admitted that he knew that he hit something with his trailer, but was not sure what it was. These statements were in response to routine questioning in the course of an investigation. Green was not in custody when he made these statements, and thus, his counsel was not ineffective when he did not move to suppress them.
 {¶ 58} Accordingly, Green's second assignment of error is without merit.
 {¶ 59} In his third and fourth assignments of error, Green argues that his conviction was not supported by sufficient evidence or manifest weight of the evidence. *Page 19 
 {¶ 60} In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Supreme Court of Ohio explained that sufficiency of the evidence and weight of the evidence are not synonymous legal concepts. They are "both quantitatively and qualitatively different." Id.
 {¶ 61} The high court further explained:
 {¶ 62} "[w]ith respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.Tibbs v. Florida (1982), 457 U.S. 31, 45 * * *, citing Jackson v.Virginia (1979), 443 U.S. 307 * * *." (Parallel citations omitted.) Id. at 386-387.
 {¶ 63} When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the *Page 20 
prosecution, any rational trier of fact could have found all of the elements of the offense proven beyond a reasonable doubt. State v.Shaffer, 11th Dist. No. 2002-P-0133, 2004-Ohio-336, at ¶ 17. Further, we note that the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 64} In the case at bar, Green was convicted of violating R.C.4511.19(A)(1)(a), which provides: "[n]o person shall operate any vehicle * * * if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." Thus, in order for a person to be convicted of OVI, the state must present sufficient evidence to prove the elements of R.C. 4511.19(A)(1)(a) beyond a reasonable doubt.
 {¶ 65} A review of the record clearly indicates that there was sufficient evidence to support a conviction. Again, Officer Erskine was aware that Green had caused an accident, and did not stop to investigate it. Green admitted that he had hit something, but could not explain why he did not stop. Officer Erskine also testified that he could immediately detect a strong odor of alcohol emanating from Green's breath and that Green admitted drinking alcohol on his boat. He also noted *Page 21 
that Green's eyes were bloodshot and watery and his speech was somewhat slurred. In addition, with respect to the field sobriety tests, Green jumbled his ABC's, could only balance on one leg for approximately seven seconds, and could not walk a straight line without staggering.
 {¶ 66} Finally, the state presented evidence regarding Green's five prior DUI convictions. Officer Erskine's observations, coupled with the fact that Green refused to take a breathalyzer test, are sufficient evidence by which a jury could find that all of the elements of the instant offense were proven beyond a reasonable doubt. As such, regarding sufficiency of the evidence, Green's third assignment of error lacks merit.
 {¶ 67} With respect to Green's fourth assignment of error, manifest weight of the evidence, the Supreme Court has stated:
 {¶ 68} "[a]lthough a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. [Robinson, supra, at 487]. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to *Page 22 
their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 {¶ 69} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [Tibbs, supra, at 42]. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175 * * * ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." Thompkins, supra, at 387.
 {¶ 70} In addition, when assessing witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of *Page 23 
fact." State v. Awan (1986), 22 Ohio St.3d 120, 123. The factfinder is free to believe all, part, or none of the testimony of each witness appearing before it. Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 3. Finally, we note that a judgment of the trial court should only be reversed as being against the manifest weight of the evidence in the exceptional case where the evidence weighs heavily against the conviction. Thompkins, supra, at 387.
 {¶ 71} With this standard in mind, we conclude that the conviction was not against the manifest weight of the evidence. Green's testimony contradicted the testimony of Officers Prementine and Erskine. Green denied that he had hit any vehicle with his trailer. He denied that he had admitted to Officer Erskine that he had been drinking on the boat. He further denied that he had anything to drink at all that day. He explained that the alcohol smell did not come from his breath, but from all the beer cans he had in his truck, which were simply cans he had picked up to take to the scrap yard for money. He stated that he could not recite the alphabet because he is illiterate, but then said he needed his glasses to read Form 2255.
 {¶ 72} Prementine testified that he witnessed the accident and then informed Officer Erskine about what he had seen. Officer Erskine testified that Green *Page 24 
admitted he had been drinking after Erskine smelled a strong odor of alcohol on him. Officer Erskine and Soukup both testified that they smelled alcohol on Green's breath and observed that Green had watery, bloodshot eyes, and spoke with a slight slur.
 {¶ 73} After reviewing the testimony, we cannot conclude that the trier of fact erred by giving more weight to the testimony of Prementine, Erskine and Soukup, rather than Green. Thus, the trial court did not lose its way and create such a "manifest miscarriage of justice" that the conviction should be reversed and a new trial ordered. Accordingly, Green's fourth assignment of error is without merit.
 {¶ 74} Therefore, appellant's four assignments of error are overruled. The judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J. and CHRISTINE T. MCMONAGLE, J.
[1] At the hearing, as well as in the entry denying the motion, the trial court did not make any findings of fact as required by Crim.R. 12 when factual issues are essential to deciding the motion.
[2] Neither the indictment, the judgment entry finding Green guilty, nor the sentencing entry, specify what provision of R.C. 4511.19 Green was charged with and convicted of at trial. However, based on the wording of the indictment, we assume it is R.C. 4511.19(A)(1)(a).
[3] On January 1, 2004, R.C. 4511.19 was amended to lower the per se concentrations of alcohol on a person's breath and in his or her blood from 0.10 to 0.08. On September 23, 2004, R.C. 4511.19(A)(1) was renumbered to R.C. 4511.19(A)(1)(a). However, the language and elements are identical. *Page 1