# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DAVID A. SHAW,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 CO 0045**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2023-CR-00026

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito Abruzzino*, Columbiana County Prosecutor, and *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Christopher P. Lacich,* Roth, Blair, for Defendant-Appellant.

Dated:  May 24, 2024

**DICKEY, J.**

{¶1}   Appellant, David A. Shaw, appeals the judgment entry of the Columbiana Court of Common Pleas overruling his motion to suppress.  Following the issuance of the judgment entry on appeal, Appellant entered a plea of no contest to one count of operating a vehicle while under the influence of alcohol, a drug of abuse or a combination of them in violation of R.C. 4511.19(A)(1)(a), a felony of the third degree.   In exchange for Appellant's plea, the state dismissed the sole remaining count of operating a vehicle while under the influence of alcohol, a drug of abuse or a combination of them in violation of R.C. 4511.19(A)(2)(A), a felony of the third degree. The execution of Appellant's 24-month sentence has been stayed pending appeal.

{¶2}   Appellant advances two assignments of error.  First, Appellant contends the trial court's decision concluding the state established reasonable suspicion for the traffic stop, in accordance with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("*Terry*"), was not supported by competent, credible evidence.  Second, Appellant argues the trial court erred when it allowed hearsay testimony at the suppression hearing. Because the arresting officer established partial independent corroboration of the unidentified informant's tip, and the Rules of Evidence do not apply at a suppression hearing, the judgment entry of the trial court overruling the motion to suppress is affirmed.

## SUPPRESSION HEARING

{¶3}   Jordan Reynolds, a police officer for the Village of Lisbon, was the sole witness at the suppression hearing.  On October 23, 2022 at roughly 2:00 p.m., Officer Reynolds was in a marked patrol car in the parking lot of Akron Children's Hospital "running radar" on vehicles traveling on N. Market Street in Lisbon, Ohio. (7/6/23 Suppression Hrg., p. 7.)  Neither Officer Reynolds nor his patrol car was equipped with a video camera.

{¶4}   A female motorist pulled her automobile next to the driver's side of the patrol car, and informed Officer Reynolds that there was a man in a truck asleep behind the wheel at the intersection of N. Market Street and Jerome Avenue. Within thirty seconds

of receiving the tip, Officer Reynolds arrived at the intersection in question, roughly a quarter mile away.

{¶5} Upon arriving at the scene, Officer Reynolds pulled into a parking lot near the intersection and observed Appellant in the driver's seat of a Chevy Silverado truck at the traffic signal. There was a female pedestrian standing in the roadway at the driver's side door of Appellant's truck.

{¶6} Officer Reynolds conceded Appellant was not asleep and the truck was running when Officer Reynolds arrived on the scene. However, he explained "[c]ars usually don't sit in traffic with a pedestrian standing besides [sic] them on a busy main road." (*Id.*, p. 10.) Officer Reynolds testified that Appellant was obstructing traffic.

{¶7} Officer Reynolds "pulled through [the parking lot] and looped around," (*Id.*, p. 17), then pulled behind Appellant's truck. Although there were vehicles stopped behind Appellant's truck at the traffic light, Officer Reynolds was able to pull directly behind Appellant's truck.

{¶8} Next, Officer Reynolds activated the turret lights on top of his patrol car. He explained at the hearing that he activated the lights to warn the surrounding vehicles that the patrol car was stationary. Officer Reynolds admitted Appellant was not free to leave the scene once the turret lights on the patrol car were illuminated due to his active investigation.

{¶9} Officer Reynolds did not order Appellant to exit from the vehicle due to safety concerns about the heavily-trafficked area. Nevertheless, Appellant immediately exited the vehicle, "walked from his driver's side, around the back of his vehicle, to the passenger side. He opened the door, looked around the vehicle, shut the door, and he started walking back [to the driver's side]." (*Id.*, p. 12.) Officer Reynolds testified Appellant was obstructing traffic when he exited the truck and walked around the vehicle, which was still parked in the roadway.

{¶10} Officer Reynolds described Appellant when he was walking around his truck after exiting as "unsteady on his feet." Officer Reynolds further described Appellant's gait as not "a normal – normal person walk." (*Id.*) At this time, Officer Reynolds exited his patrol car and attempted to speak with Appellant, but Appellant walked past him. Based on Officer Reynolds' training and experience, he concluded Appellant was impaired.

**{¶11}** According to the incident report submitted by Officer Reynolds, he instructed Appellant to walk back to the patrol car for a conversation, and Appellant complied. While Officer Reynolds was "attempting to talk with Appellant," the female pedestrian he first saw standing by the driver's side of Appellant's truck approached Officer Reynolds and said she "was in the area watching the [truck] and it was parked at the traffic light for three light cycles." (*Id.*, p. 10.)

**{¶12}** During the brief conversation with Appellant that followed, Officer Reynolds detected the strong odor of alcohol on Appellant's person, and observed Appellant's eyes were bloodshot and his speech was slurred, despite the fact that Appellant denied consuming any alcohol. Officer Reynolds informed Appellant that he did not believe Appellant had not consumed any alcoholic beverages that day, to which Appellant admitted he had "one or two." (Incident Report, p. 3.) As a consequence, Officer Reynolds conducted field sobriety tests, which ultimately resulted in Appellant's arrest for operating a vehicle under the influence of alcohol.

**{¶13}** In the July 14, 2023 judgment entry on appeal, the trial court opined Officer Reynolds had reasonable suspicion to initiate the *Terry* stop, based on "information gathered from two unknown citizens." (7/14/23 J.E., p. 3.) In addition to the two anonymous tips, the trial court relied on Officer Reynolds' observations at the scene, including the truck stopped at the intersection, the second tipster at the driver's side window of the truck, the vehicles stopped behind the truck, and Appellant's unprompted exit from the truck, as well as the reasonable inference that the truck had not moved recently. (*Id.*, p. 5-6.) It is important to note that the trial court did not specify in its judgment entry when in this particular fact pattern Officer Reynolds *initiated* the *Terry* stop.

**{¶14}** On September 18, 2023, Appellant entered his plea of no contest and the trial court imposed an aggregate sentence of 24 months, which included a mandatory minimum jail sentence of 120 days and 20 months in a state correctional institution. Appellant was resentenced on September 28, 2023 after the trial court discovered the mandatory minimum jail sentence was 60 days, to be followed by a 22-month term of imprisonment in a state correctional facility. This timely appeal followed.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION TO SUPPRESS EVIDENCE FOR THE TRIAL COURT'S FINDINGS OF FACT ARE NOT BASED ON COMPETENT, CREDIBLE EVIDENCE.**

**{¶15}** Appellate review of a ruling on a motion to suppress presents a mixed question of fact and law. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). The appellate court must decide questions of law de novo, without deference to the lower court's legal conclusions. *Burnside* at ¶ 8. Generally, the state bears the burden of proving that a warrantless search or seizure meets Fourth Amendment standards of reasonableness. *Maumee v. Weisner*, 1999-Ohio-68, 720 N.E.2d 507 (1999).

**{¶16}** The Fourth Amendment permits brief investigative stops when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see Terry, supra,* at ¶ 21-22. The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The standard takes into account "the totality of the circumstances – the whole picture." *Cortez, supra*, at 417, 101 S.Ct. 690. The reasonableness of an investigatory stop is determined by considering the totality of the circumstances as they were known to the officer prior to the stop, together with reasonable inferences that could be drawn from the circumstances, bearing in mind that each piece of information may vary greatly in its value and degree of reliability. *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, ¶ 40, 175 N.E.3d 527, citing *White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301; *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

**{¶17}** Although a mere "hunch" does not create reasonable suspicion, *Terry, supra,* at 27, 88 S.Ct. 1868, the level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Further, reasonable suspicion "need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

**{¶18}** The United States Supreme Court has "firmly rejected the argument 'that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person.' " (Brackets sic.) *Navarette v. California*, 572 U.S. 393, 397, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), quoting *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). However, in *White*, the United States Supreme Court acknowledged "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," because "ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations," and an anonymous tipster's veracity is " 'by hypothesis largely unknown, and unknowable.' " *White, supra,* at 329.

**{¶19}** When the information possessed by law enforcement before the stop stems solely from an informant's tip, the determination of reasonable suspicion is limited to an examination of the weight and reliability due to the tip. *Weisner, supra,* at 299. "The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id.* Factors considered " 'highly relevant in determining the value of [the informant's] report' " are the informant's veracity, reliability, and basis of knowledge. *Id.*, quoting *White, supra,* at 328.

**{¶20}** After first identifying three types of informants – (1) anonymous informants, (2) known informants (someone from the criminal world who has provided previous reliable tips), and (3) identified citizen informants, the Ohio Supreme Court in *Weisner* recognized an anonymous informant is comparatively unreliable and generally requires some independent police corroboration in order to demonstrate some indicia of reliability. *Id.* at 300, citing *White, supra,* at 329. By contrast, an identified citizen informant may be highly reliable and, therefore, a strong showing as to other indicia of reliability may be

unnecessary. *Id.* The *Weisner* Court cited the United State Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for the proposition that "if an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – [ ] rigorous scrutiny of the basis of his knowledge unnecessary." *Id.* at 233-234.

**{¶21}** The Ohio Supreme Court recently addressed the reliability of a face-to-face tip from an unidentified informant in *Tidwell, supra*. In that case, a police officer was completing an accident report in a convenience store parking lot when a customer standing in the doorway of the store yelled to the officer, "Hey, you need to stop that vehicle. That lady (Tidwell) is drunk." The customer directed the officer's attention to an SUV exiting a parking space.

**{¶22}** The officer testified Tidwell backed her vehicle out of the parking space at an unusually slow speed, then slowly drove forward toward a heavily-trafficked road. The officer further observed Tidwell had a blank stare on her face. He testified that he knew from his training and experience that a blank stare may indicate impairment, so he initiated an investigative stop.

**{¶23}** The convenience store customer was never identified. It was later reported by a store clerk who sold alcohol to Tidwell, that the clerk had asked the unidentified customer to relay the clerk's concern about Tidwell's condition to the officer.

**{¶24}** The Ohio Supreme Court recognized the convenience store customer did not fit neatly into one of the three tipster categories. Although the *Tidwell* Court acknowledged the officer had an opportunity to assess the customer's reliability due to the face-to-face contact, the Court ultimately concluded the customer's lack of identification foreclosed his classification as an identified citizen information. As a consequence, the Court declined to place the customer in one of the informant categories.

**{¶25}** Instead, the *Tidwell* Court predicated the reasonableness of the investigative stop on the contemporaneous nature of the customer's tip and the officer's own observations of Tidwell's impairment at the scene. Significantly, the Court rejected Tidwell's argument that the officer should have attempted to further corroborate the tip due to the amount of traffic on the highway Tidwell was about to enter.

**{¶26}** Turning to the facts in the above-captioned appeal, Officer Reynolds testified that he activated his overhead lights "[w]hen [he] pulled behind the vehicle on Jerome Street * * * to warn traffic that * * * [the truck and the patrol car] were stopped there." Further, Officer Reynolds conceded that Appellant was not free to leave the scene once the turret lights on the patrol car were activated due to his active investigation.

**{¶27}** A traffic stop typically begins with the activation of the law enforcement vehicle's overhead lights. *See State v. Brown*, 12th Dist. Warren No. CA2020-09-054, 2021-Ohio-2381, ¶ 5 ("Once the deputy began his pursuit, Brown turned quickly onto a different street and the deputy turned on his cruiser's lights to initiate a traffic stop."); *State v. Jefferson*, 5th Dist. Richland No. 18CA2, 2019-Ohio-156, ¶ 3 ("As Browne activated his overhead lights and began calling in the traffic stop, Jefferson backed out of the driveway and took off at a high rate of speed."); *State v. Wade*, 3rd Dist. Seneca No. 13-16-23, 2017-Ohio-1319, ¶ 2 ("Elliott then activated his overhead lights and began a traffic stop at approximately 4:05 p.m."); *State v. Lewis*, 2017-Ohio-996, 86 N.E.3d 974, ¶ 10 (3rd Dist.) (The activation of the flashing lights and siren of patrol car is "universal sign" that vehicle is subject of a traffic stop.); *State v. Norvet*, 9th Dist. Medina No. 14CA0114-M, 2016-Ohio-3494, ¶ 9 ("Trooper Hasler then turned on his overhead emergency lights and began to initiate a traffic stop."); *State v. Burgin*, 9th Dist. Lorain No. 12CA010277, 2013-Ohio-4261, ¶ 6 ("Trooper Trader began to follow Mr. Burgin, and he activated his overhead lights to initiate a traffic stop for following too closely."); *State v. Green*, 8th Dist. Cuyahoga No. 88234, 2007-Ohio-1713, ¶ 9 ("As the maroon truck began to pull away with the boat, Officer Erskine got back into his patrol car, drove approximately thirty to forty feet, activated his overhead lights, and initiated a traffic stop of the truck."); *State v. Henderson*, 2nd Dist. Montgomery No. 19788, 2003-Ohio-6522, ¶ 5 ("Offices [sic] began to initiate a traffic stop on the van by turning of [sic] their overhead lights."); and *City of Cincinnati v. Jacobs,* 1st Dist. Hamilton Nos. C- 010279, C-010280, C-0102281, 2001 WL 1591380, *1, (Dec. 14, 2001) ("As Jacobs began to turn southbound onto Sycamore Street, Officer Perkins activated his cruiser's overhead lights to initiate a traffic stop of Jacobs's car."). Because we find the investigatory stop was initiated when Officer Reynolds activated the turret lights on the patrol car, only events occurring prior to the activation of the lights are included in our reasonable suspicion analysis.

**{¶28}** The original informant, like the informant in *Tidwell*, does not fall neatly into one of the three categories. Like the tipster in *Tidwell*, Officer Reynolds did not know the woman's identity, however, he had the opportunity to assess her credibility because of the face-to-face meeting. With respect to the informant's unidentified status, the *Tidwell* Court observed:

> That the informant's identity was unknown cannot be ignored insofar as it limited [the officer's] ability to fully assess his veracity, reliability, basis of knowledge, and motive for coming forward. But the informant could not know whether his identity might later be discovered based on his face-to-face contact with the police, surveillance video at the [convenience store], or further investigation. Even an unidentified informant who comes forward with accusatory information does so at some legal peril if he knowingly makes a false report. *See* R.C. 2917.32(A). An informant's unidentified status does not necessarily extinguish all indicia of reliability from the informant's tip given the potential for subsequent positive identification. *See Navarette*, 572 U.S. 393, 134 S.Ct. 1683, 188 L.Ed.2d 680.

*Id.* at 67.

**{¶29}** The same is true here. The original tipster approached Officer Reynolds in a vehicle. Had Officer Reynolds recorded the license plate or determined her license plate number by way of surveillance video from the Akron Children's Hospital parking lot, he could have ascertained her identity. Therefore, we find she placed herself in some legal peril if she knowingly made a false report.

**{¶30}** Next, the *Tidwell* Court attributed significance to the fact that the crime was occurring in real time. The Court reasoned the informant "surely recognized that the immediate reaction he expected from 'the officer' would either prove him right or prove him wrong" therefore, "[t]he informant's suggested knowledge of Tidwell's present condition and anticipated response from the officer [ ] gave the tip some further indicia of reliability." *Id.* at 68. Although the original informant did not provide the tip at the scene of the crime as in *Tidwell, supra,* she nonetheless provided the information in real time

with the expectation of an immediate reaction from Officer Reynolds. Because the original tip was provided within a thirty-second drive (a distance of roughly one-quarter of a mile) from the intersection, we attribute some further indicia of reliability to the tip.

**{¶31}** Finally, the *Tidwell* Court cited the officer's observations at the scene – Tidwell's blank stare and atypically slow speed, which corroborated the informant's tip that Tidwell was intoxicated, as well as the fact that Tidwell was about to enter a busy highway.

**{¶32}** The *Tidwell* Court concluded:

> To be sure, this tip, like the anonymous telephone tip in [*Florida v.] J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 [2000] (that a young black man standing at a particular bus stop and wearing a plaid shirt was carrying a gun), was to some extent a bare-bones assertion that identified the person the [convenience store] customer meant to accuse but did not divulge the informant's basis of knowledge or provide any predictive information. But unlike the telephone tip in *J.L.*, which a brief encounter with the subject of the tip would not by itself enable the officer to confirm or dispel, [the officer's] brief encounter with Tidwell immediately enabled him to confirm that Tidwell was operating a motor vehicle while intoxicated based on what he personally smelled, saw, and heard. The customer's face-to-face contemporaneous report of alleged criminal activity occurring right before [the officer's] eyes justified the investigatory response [the officer] took in this case.

*Id.* at ¶ 50.

**{¶33}** The *Tidwell* Court predicated the existence of reasonable suspicion on "the unidentified customer's tip and the officer's own *partial* corroboration of that tip." (Emphasis added) *Id.* at ¶ 54. In this appeal, Officer Reynolds arrived at the intersection within thirty seconds of the tip and observed a truck driven by a man at the traffic signal at the intersection in question. Officer Reynolds further observed a line of traffic behind the truck. Officer Reynolds reasonably believed Appellant had been obstructing the free

flow of traffic at the intersection, which likely would constitute a traffic violation. Officer Reynolds also witnessed an unusual situation in the middle of a "busy main road," that is, a pedestrian at the driver's side window of the truck. Officer Reynolds could have reasonably believed that the pedestrian had witnessed what appeared to be a sleeping man in a truck that had not moved, and she entered the intersection to awaken the driver. The foregoing inference would explain why Appellant was awake, despite the original tipster's observation that he was asleep. Defense counsel argued at the hearing that the woman may have been standing at the driver's side window for a purely innocuous reason, however an officer is not obliged to "rule out the possibility of innocent conduct" in order to establish reasonable suspicion. *Arvizu, supra,* at 277, 122 S.Ct. 744. Finally, we recognize Officer Reynolds, like the officer in *Tidwell*, was not required to further corroborate the tip based on his testimony that Appellant's vehicle was on a busy main road. Accordingly, we find Officer Reynolds had reasonable suspicion to initiate the *Terry* stop to investigate criminal activity.

{¶34} For the foregoing reasons, we conclude the state did not violate Appellant's Fourth Amendment rights. Despite the fact that we rely on a narrower group of facts than the trial court, we find Officer Reynolds established partial independent corroboration of the original informant's tip prior to initiating the stop, based on the reasonable inferences drawn from the circumstances that Officer Reynolds observed at the intersection. As we find there is competent, credible evidence in the record supporting the trial court's decision overruling the motion to suppress, we affirm the judgment entry of the trial court and we conclude that the first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT COMMITTED ERROR WHEN IT ALLOWED HEARSAY TESTIMONY INTO EVIDENCE, OVER OBJECTION, AT THE MOTION TO SUPPRESS HEARING.**

{¶35} "[T]he rules of evidence do not apply at hearings to determine the admissibility of evidence." *State v. Henderson*, 7th Dist. Mahoning No. 16 MA 0057, 2019-Ohio-130, ¶ 11, citing Evid.R. 104(A) (preliminary questions concerning the

admissibility of evidence shall be determined by the court who is not bound by the rules of evidence, except those on privilege); Evid.R. 101(C)(1). *See* also *United States v. Matlock*, 415 U.S. 164, 172-73, 94 S.Ct. 988, 994, 39 L.Ed.2d 242 (1974) (as to hearsay at a suppression hearing, the Court held "the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence"). Accordingly, we find Appellant's second assignment of error has no merit.

## CONCLUSION

{¶36} For the foregoing reasons, the judgment entry of the trial court overruling Appellant's motion to suppress is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 23 CO 0045

[Cite as *State v. Shaw*, 2024-Ohio-2022.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**