[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Tidwell*, Slip Opinion No. 2021-Ohio-2072.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2072

THE STATE OF OHIO, APPELLANT, *v*. TIDWELL, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Tidwell*, Slip Opinion No. 2021-Ohio-2072.]**

*Constitutional law—Fourth Amendment—Investigative stop—Police officer had reasonable suspicion to briefly detain suspect in order to confirm or dispel an unidentified witness's assertion that suspect was operating a motor vehicle while intoxicated—Court of appeals' judgment upholding trial court's order granting motion to suppress reversed.*

(No. 2020-0290—Submitted March 30, 2021—Decided June 24, 2021.)

APPEAL from the Court of Appeals for Hamilton County,

Nos. C-180511 and C-180512, 2019-Ohio-4493.

_____

**DONNELLY, J.**

{¶ 1} The Fourth Amendment's prohibition of unreasonable searches and seizures does not forbid a police officer from initiating a brief investigatory stop of a person if the officer has reasonable suspicion to believe that the person is or is

about to be engaged in criminal activity. In this case, the issue is whether a police officer had reasonable suspicion to briefly detain appellee, Sherry Tidwell, in order to confirm or dispel an unidentified witness's assertion that Tidwell was operating a motor vehicle while intoxicated. Based on the totality of the circumstances then confronting the officer, we hold that his investigatory stop of Tidwell was reasonable and thus did not violate the Fourth Amendment to the United States Constitution. We accordingly reverse the judgment of the First District Court of Appeals that upheld the Hamilton County Municipal Court's order granting Tidwell's motion to suppress, and we remand this case to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} At 8:00 p.m. on Saturday, November 11, 2017, Sergeant Jacques Illanz—on duty, in uniform, and in a marked state-highway-patrol cruiser—happened upon a two-car collision on Fields-Ertel Road in Warren County, Ohio. Because the vehicle damage was minor and Fields-Ertel Road is a heavily traveled road at that time of day, Sergeant Illanz quickly marked the scene of the accident and directed the drivers of both vehicles into a nearby Speedway parking lot to complete an accident report.

{¶ 3} As Sergeant Illanz was completing the accident report in the Speedway parking lot, a man standing in the doorway to the Speedway store yelled to Sergeant Illanz: "Hey, you need to stop that vehicle. That lady is drunk." The man directed Sergeant Illanz's attention to an SUV that was backing out of a parking space. Sergeant Illanz did not know the identity of the man who yelled to him, but he later learned that he was a Speedway customer.

{¶ 4} Sergeant Illanz watched as the driver backed her vehicle out of its parking space at an unusually slow speed and then slowly drove forward, heading toward nearby Fields-Ertel Road, which was still busy with heavy traffic. At that time, Sergeant Illanz saw that the driver had a blank stare on her face, and he

testified that he knows from his training and experience that a blank stare may indicate impairment.

{¶ 5} At that point, Sergeant Illanz walked in front of the vehicle to get the driver's attention and gestured for her to stop. Sergeant Illanz estimated that approximately 30 seconds elapsed between the time that he heard the Speedway customer yell to him and the time that he stopped the vehicle. There is no dispute that Sergeant Illanz stopped Tidwell's vehicle out of his concern for public safety.

{¶ 6} When the vehicle stopped, Sergeant Illanz asked the driver, Tidwell, to roll down her window, turn off the car, and hand him the car key. After Tidwell complied with those requests, Sergeant Illanz asked her some questions. He later testified, "I started just making some simple conversation with her, asked her, you know, what's going on, where's she going, stuff like that." Sergeant Illanz detected a strong odor of alcohol coming from the vehicle and noticed that Tidwell's eyes were bloodshot and glassy. He testified that when he asked Tidwell for her driver's license, it took her "a good couple of minutes" to comply, due to her slow and exaggerated movements, and she maintained a blank stare when handing it to him.

{¶ 7} In response to Sergeant Illanz's questions, Tidwell said she was heading home after having purchased alcohol from the Speedway store. When asked whether she had been drinking, Tidwell told Sergeant Illanz that she had not had anything to drink. Tidwell also told him that before arriving at the Speedway, she had been at a house with friends, watching a college football game.

{¶ 8} Throughout the course of this encounter, Sergeant Illanz continued to detect an odor of alcohol coming from the vehicle. The blank stare on Tidwell's face likewise persisted. Sergeant Illanz additionally noted that Tidwell's speech was slow, very slurred, and at times unintelligible. Sergeant Illanz stated that this encounter with Tidwell lasted no more than five minutes.

{¶ 9} As Sergeant Illanz was about to radio for dispatch to call for a response from a law-enforcement agency that had jurisdiction over the private

Speedway premises, Hamilton County Deputy Sheriff Randy Reynolds, having previously been dispatched to respond to the two-car collision on Fields-Ertel Road, arrived at the Speedway. Upon Deputy Reynolds's arrival, Sergeant Illanz told him why he had stopped Tidwell's vehicle and asked him to take over the investigation.

{¶ 10} As Deputy Reynolds talked with Tidwell, he detected a strong odor of alcohol coming from her facial area. He observed that Tidwell's eyes were watery and bloodshot, that her eyelids were droopy, and that her speech was slow and slurred. When Deputy Reynolds asked Tidwell whether she had been drinking, she said yes and asked him to take her home to her son.

{¶ 11} Deputy Reynolds then asked Tidwell if she would exit the vehicle and submit to field sobriety tests, and she agreed to do so. She stumbled as she got out of the vehicle. Deputy Reynolds continued to smell alcohol coming from Tidwell after she was outside the vehicle. He then administered a series of field sobriety tests; the tests indicated that Tidwell was impaired and unable to legally operate a motor vehicle.

{¶ 12} While Deputy Reynolds was talking to Tidwell, Sergeant Illanz entered the Speedway store and spoke with the clerk who was working behind the counter. The clerk stated that he had sold alcohol to Tidwell and, concerned that she was intoxicated, had told the unidentified Speedway customer, as the customer was leaving the store, to make Sergeant Illanz aware of Tidwell's possible intoxication. The unidentified customer had left the premises before Sergeant Illanz entered the store.

{¶ 13} After Deputy Reynolds concluded that Tidwell was under the influence of alcohol or drugs, he placed her under arrest. Tidwell was charged with operating a vehicle while under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a) and (h).

{¶ 14} Tidwell filed a motion to suppress the evidence gathered from the stop. Following a hearing, the Hamilton County Municipal Court granted Tidwell's

4

motion, finding that Tidwell had not driven her vehicle erratically, she had not been involved in an accident, and the anonymous tip from the unidentified Speedway customer was "essentially unreliable."

{¶ 15} On appeal, the First District Court of Appeals affirmed the trial court's judgment. The court of appeals held that Sergeant Illanz lacked the reasonable suspicion necessary to effectuate a lawful investigatory stop because the unidentified Speedway customer's anonymous tip lacked sufficient indicia of reliability and there was no evidence of any erratic driving by Tidwell prior to the stop.

{¶ 16} We accepted jurisdiction over the following proposition of law:

> Simple face-to-face contact between an unnamed citizen and a police officer may be enough to remove the citizen from the category of "anonymous" and consider him a "citizen informant," whose tip merits a high degree of credibility and value, rendering the tip sufficient to withstand a Fourth Amendment challenge without independent police corroboration.

*See* 158 Ohio St.3d 1504, 2020-Ohio-2819, 144 N.E.3d 451.

**ANALYSIS**

{¶ 17} In this case, the trial court granted Tidwell's motion to suppress after determining that the investigatory stop effectuated by Sergeant Illanz was unreasonable and thus violated the Fourth Amendment. We must decide whether the court of appeals correctly upheld that decision. Our analysis begins with consideration of the applicable standard of review.

*Standard of Review*

{¶ 18} Appellate review of a ruling on a motion to suppress presents a mixed question of fact and law. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-

5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). The appellate court must decide questions of law de novo, without deference to the lower court's legal conclusions. *Burnside* at ¶ 8.

*Investigatory Stop Based on Reasonable Suspicion*

**{¶ 19}** The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.[1] Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer who lacks probable cause to arrest may, consistent with the Fourth Amendment, make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity. *See Navarette v. California,* 572 U.S. 393, 396, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014).

**{¶ 20}** Reasonable suspicion for a *Terry* stop "is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). "Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' * * *, that must be taken into account when evaluating whether there is reasonable suspicion." *Id.*, quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct.690, 66 L.Ed.2d 621 (1981). Police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *Cortez* at 418.

---

1. The court of appeals and the argument section of Tidwell's merit brief filed in this court each made a single reference to Article I, Section 14 of the Ohio Constitution. Because the decision below and the arguments on appeal are based entirely on Fourth Amendment jurisprudence, we likewise decide this case on that body of law.

{¶ 21} "[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *United States v. Place*, 462 U.S. 696, 709, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Declining to adopt a hard-and-fast time limit for a permissible *Terry* stop, the United States Supreme Court, in *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), instead instructed that it was "appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 686. In that case, the court held that a 20-minute stop was not unreasonable, because the police acted diligently and the suspect's actions contributed to the length of the detention.

{¶ 22} In the case before us, Sergeant Illanz initiated an investigative traffic stop of Tidwell when he walked in front of her vehicle and gestured for her to stop. He then obtained Tidwell's car key from her before engaging her in conversation; thus, Tidwell plainly was not free to leave, which Sergeant Illanz admitted. The issue here is whether the information then available to Sergeant Illanz gave him reasonable suspicion to initiate a brief investigatory stop.

*Information Obtained from Others*

{¶ 23} The information then available to Sergeant Illanz included the information that first drew his attention to Tidwell's vehicle—the unidentified Speedway customer who yelled to Sergeant Illanz: "Hey, you need to stop that vehicle. That lady is drunk." The parties here dispute the extent to which Sergeant Illanz could rely on that statement to justify the stop. Case law provides some helpful guideposts.

{¶ 24} To start, the United States Supreme Court has "firmly rejected the argument 'that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another

person.' " (Brackets sic.) *Navarette*, 572 U.S. at 397, 134 S.Ct. 1683, 188 L.Ed.2d 680, quoting *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

{¶ 25} In *Adams*, a known informant told an officer on patrol in a high-crime area that a person seated in a nearby vehicle was carrying narcotics and had a gun at his waist. *Id*. at 144-145. In evaluating whether the officer had had reasonable suspicion to stop the suspect, the United States Supreme Court stated: "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation." *Id*. at 147. Observing that a tip from a known informant is more reliable than an anonymous telephone tip, the court held that in that case, there was sufficient indicia of reliability because the known informant "came forward personally to give information that was immediately verifiable at the scene" and could have been subject to immediate arrest if he had knowingly made a false report. *Id*. at 146-147.

{¶ 26} In *White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301, an anonymous caller told the police that a woman would drive from a particular apartment building to a particular motel in a brown Plymouth station wagon with a broken right taillight and would have cocaine with her. *Id*. at 327. Acknowledging that the determination whether police had had the reasonable suspicion necessary to initiate an investigatory stop required examining both the content of the information possessed by the police and its degree of reliability, the United States Supreme Court stated that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id*. at 330. In that case, the police officers were able to corroborate the tip's innocuous details before they stopped the station wagon as it neared the motel. *Id*. at 331. Because that anonymous tip accurately predicted future behavior, the tipster demonstrated "a special

familiarity" with the suspect's affairs, which implied that the tipster had "access to reliable information about that individual's illegal activities." *Id*. at 332. Although the court said it was "a close case," it held that the anonymous tip, as corroborated, exhibited sufficient indicia of reliability under the totality of the circumstances to justify the investigatory stop of the suspect's car. *Id*.

{¶ 27} By contrast, in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the police received an anonymous telephone call providing a bare-bones tip that a young black man standing at a particular bus stop and wearing a plaid shirt was carrying a gun. *Id*. at 268. The tipster did not explain how he or she knew about the gun, did not suggest that he or she had any special familiarity with the young man's affairs, and did not provide any predictive information that could be corroborated to assess the tipster's credibility. *Id*. at 271. That anonymous tip thus lacked even the moderate indicia of reliability that was present in *White*. *J.L.* at 271. The *J.L.* court observed:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Id*. at 272.

{¶ 28} In *Navarette*, which is the most recent United States Supreme Court case to address this issue, a 9-1-1 caller reported that a silver pickup truck traveling south at a particular mile marker had run the caller off the roadway. 572 U.S. at 395, 134 S.Ct. 1683, 188 L.Ed.2d 680. The caller provided the suspect truck's

license-plate number. *Id*. Shortly after hearing a police radio dispatch of the 9-1-1 caller's report, a highway-patrol officer spotted the truck and pulled it over. As officers approached the stopped truck, they smelled marijuana, and they discovered 30 pounds of marijuana in a subsequent search of the truck bed. Treating the 9-1-1 call as an anonymous tip, the *Navarette* court found sufficient indicia of reliability from the fact that the tip reporting the alleged dangerous driving was made immediately after it occurred—which was tantamount to a "present-sense impression" and an "excited utterance" in hearsay-exception parlance—and it was made seemingly without time for reflection based on where the suspect was pulled over in comparison to the mile-marker location where the tipster said the truck had run her off the road. *Id*. at 398-400. Additionally, 9-1-1 calls can be recorded, and the police can identify the phone number from which a 9-1-1 call was made and where the phone was at the time of the call, which are facts that the court noted could deter callers from making a false report to the police. *Id.* at 400-401. Because the 9-1-1 caller's contemporaneous report of being run off the roadway created reasonable suspicion of the ongoing criminal offense of drunk driving, the court held that the investigatory traffic stop was reasonable. *Id*. at 401-404.

### Categories of Informants

{¶ 29} In attempting to ascertain whether information provided by an informant's tip bore some indicia of reliability that established reasonable suspicion for an investigatory stop, many courts, including this court, have found it useful to place the informant into one of three categories: (1) anonymous informant, (2) known informant (someone from the criminal world who has provided previous reliable tips), and (3) identified citizen informant. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999); *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 36, *overruled on other grounds*, *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248.

{¶ 30} In *Weisner*, a motorist telephoned the police to report that he was following a car that he suspected was being driven by a drunk driver. The caller provided the make, color, and license-plate number of the suspect vehicle and described it as " 'weaving all over the road.' " *Id.* at 295. The caller also identified himself to the police dispatcher, providing his name and cellphone and home-phone numbers. When the caller reported that the car was stopped at a railroad crossing, a police officer pulled into a parking lot opposite the railroad crossing to wait. After the train passed, the officer spotted the suspect vehicle and radioed the dispatcher for verification. Approximately 30 to 40 seconds elapsed, during which the officer did not observe any erratic driving or weaving. After receiving confirmation from the police dispatcher, the officer stopped the car, questioned the driver, and arrested him for drunk driving.

{¶ 31} In that case, we said that when "the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." *Id*. at 299. "The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id*. Acknowledging the three recognized categories of informants, we noted that an anonymous informant was comparatively unreliable and would consequently require independent police corroboration in order to demonstrate some indicia of reliability. *Id.* at 300. By contrast, we determined that an identified citizen informant may be highly reliable and, therefore, a strong showing as to other indicia of reliability may be unnecessary. *Id*.

{¶ 32} We concluded that the tipster in *Weisner* qualified as an identified citizen informant whose information possessed a greater indicia of reliability than that of an anonymous informant. *Id*., 87 Ohio St.3d at 301-302, 720 N.E.2d 507. We emphasized, however, that our categorization of the informant did not itself determine the outcome of the case but rather was just one element in the totality of

the circumstances. *Id.* at 302. The informant's credibility in that case was enhanced by the fact that he identified himself and provided an eyewitness account of the suspect's dangerous driving as it happened. *Id.* When we took all the facts into consideration, we found the identified-citizen informant's tip to merit a high degree of credibility and value, rendering it sufficient to withstand the Fourth Amendment challenge without independent police corroboration. *Id.* at 302-303.

*Categorizing the Speedway Customer*

{¶ 33} In this case, the state argues that the face-to-face contact between the unidentified Speedway customer and Sergeant Illanz was sufficient to remove the customer from the category of "anonymous informant," whose tip would have had minimal indicia of reliability and would have required independent police corroboration to establish reasonable suspicion, to the category of "citizen informant," whose tip had a greater indicia of reliability, even though the customer's identity remained unknown. And in the state's view, "[t]he tip of a 'citizen-informant,' named or unnamed, is presumptively reliable and does not require independent police corroboration."

{¶ 34} But *Weisner* makes clear that it was the combination of facts in that case—the informant contacted the police, provided identifying information including his name and cellphone and home-phone numbers, and remained in constant contact with the police dispatcher through the course of the incident—that sharply reduced the likelihood that the informant was making a false report and gave his tip a higher indicia of reliability. *Id.* at 301-302. The informant's identified status was integral to the court's determination that the tip had a high indicia of reliability.

{¶ 35} In contrast, in this case, it is undisputed that the Speedway customer initiated contact with Sergeant Illanz but his identity was and remains unknown. When the customer called out to Sergeant Illanz, Sergeant Illanz did not have any information as to the customer's veracity, reliability, or basis of knowledge.

Sergeant Illanz did not know whether the customer personally perceived Tidwell to be intoxicated or whether he was simply passing on information from someone else (which may in fact have been the case, considering the Speedway clerk's subsequent statement to Sergeant Illanz) or whether he simply made the whole thing up.

{¶ 36} Because Sergeant Illanz's attention was naturally focused on Tidwell's vehicle, there was no real opportunity to obtain additional information from the customer before he left the scene. It nevertheless would require a strained analysis to ascribe to this unidentified citizen informant the higher degree of reliability that we ascribed to the identified citizen informant in *Weisner*.

{¶ 37} Tidwell, on the other hand, maintains that the Speedway customer falls into the category of anonymous informant and thus his tip lacked the indicia of reliability necessary to establish reasonable suspicion for the stop. But treating this customer strictly as anonymous fails to take into account certain facts that may have given his information some indicia of reliability.

{¶ 38} Specifically, the customer directed his statement to Sergeant Illanz and made no effort to conceal his physical appearance or demeanor. Further, his tip described what was then an existing condition—Tidwell's intoxication—that the customer seemingly had a contemporaneous opportunity to perceive and that could immediately be confirmed or dispelled by Sergeant Illanz. Given the urgency of the situation—an allegedly drunk motorist about to drive onto a busy road—obtaining identification from the Speedway customer simply to enhance his indicia of reliability surely was not Sergeant Illanz's most pressing priority at that time. And based on Sergeant Illanz's response to the tip, he must have seen nothing in the customer's demeanor to make him doubt the customer's veracity.

{¶ 39} We observed in *Weisner* that "the distinctions between these categories are sometimes blurred," 87 Ohio St.3d at 300, 720 N.E.2d 507, and the facts in this case illustrate that the Speedway customer did not fit neatly into either

category. He resembled an identified citizen informant in some respects by having initiated face-to-face communication with Sergeant Illanz, but he also resembled an anonymous informant in that his identity was unknown. As indicated in *Weisner*, however, categorical classifications of informants may be instructive but are not necessarily outcome determinative. *Id*. at 302. We agree with the following observation by the Second District Court of Appeals: "[T]the categories * * * are not always neat and tidy. But the categories are simply a tool used to assist in the ultimate determination of the informant's reliability." *State v. Cook*, 2d Dist. Clark No. 2019-CA-28, 2019-Ohio-3918, ¶ 12.

{¶ 40} Rather than attempt to force the Speedway customer into one of the categories, we determine the reasonableness of this investigatory stop by considering the totality of the circumstances as they were known to Sergeant Illanz prior to the time he stopped Tidwell, together with reasonable inferences that could be drawn from the circumstances, keeping in mind that each piece of information may vary greatly in its value and degree of reliability. *See White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301; *Adams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612.

*Totality of the Circumstances*

{¶ 41} In this case, the information available to Sergeant Illanz prior to his investigatory stop of Tidwell's vehicle consisted essentially of two components, specifically (1) what he was told—the information communicated to Sergeant Illanz by the Speedway customer and (2) what he observed—Sergeant Illanz's own observations of Tidwell and the way she operated her motor vehicle up until the time he walked in front of her car. Based on the information then available to Sergeant Illanz and reasonable inferences that could be drawn therefrom, we conclude that the investigatory stop he initiated in this case was reasonable.

{¶ 42} First, it is significant that the Speedway customer initiated this face-to-face contact with Sergeant Illanz. While information from an identified citizen

informant who comes forward to provide eyewitness information about a crime in progress may have a higher indicia of reliability than that provided by an anonymous informant, *Weisner*, 87 Ohio St.3d at 302, 720 N.E.2d 507, information from an unidentified citizen informant who initiates face-to-face public contact with the police to report criminal activity then occurring, with no attempt to conceal his identity, is not necessarily without investigative value. *See, e.g.*, *Cook*, 2019-Ohio-3918 (upholding investigatory traffic stop based on open, public contact initiated by unidentified citizen who informed officer in marked cruiser that person in car directly behind cruiser was waving a gun around); *State v. Ramey*, 129 Ohio App.3d 409, 412-413, 717 N.E.2d 1153 (1st Dist.1998) (upholding investigatory traffic stop that was based in part on an officer's radio transmission indicating that a witness had flagged down the officer to report that a gold Honda with a specified license-plate number traveling on particular road was " 'a possible DUI' "). Moreover, face-to-face contact with an informant allows an officer to personally observe the informant's demeanor and evaluate his veracity.

{¶ 43} That the informant's identity was unknown cannot be ignored insofar as it limited Sergeant Illanz's ability to fully assess his veracity, reliability, basis of knowledge, and motive for coming forward. But the informant could not know whether his identity might later be discovered based on his face-to-face contact with the police, surveillance video at the Speedway, or further investigation. Even an unidentified informant who comes forward with accusatory information does so at some legal peril if he knowingly makes a false report. *See* R.C. 2917.32(A). An informant's unidentified status does not necessarily extinguish all indicia of reliability from the informant's tip given the potential for subsequent positive identification. *See Navarette*, 572 U.S. 393, 134 S.Ct. 1683, 188 L.Ed.2d 680.

{¶ 44} Second, and as was the case in *Navarette* and *Weisner*, the informant's tip was about a possible crime that was then occurring—operating a

motor vehicle while intoxicated.  The informant here urged Sergeant Illanz to stop a specific vehicle because the woman driving it was drunk.  The accusation here was not about a past crime but rather was about alleged criminal activity that was then afoot.  The informant surely recognized that the immediate reaction he expected from Sergeant Illanz would either prove him right or prove him wrong.  The informant's suggested knowledge of Tidwell's present condition and anticipated response from the officer thus gave the tip some further indicia of reliability.

{¶ 45} Third, because the informant's tip was communicated contemporaneously with the alleged crime's occurrence, the encounter gave the officer no apparent cause to question the informant's motive.  Thus, because the alleged crime was reported as it was occurring, the informant's contemporaneous report gave the tip a further degree of trustworthiness.

{¶ 46} Fourth, Sergeant Illanz testified that he observed a blank stare on Tidwell's face after she slowly backed her vehicle out of its parking space and then began driving slowly toward Fields-Ertel Road.  That significant observation tended to corroborate the informant's report that Tidwell was intoxicated.  Without doubt, a motorist's blank stare could be due to any number of innocent noncriminal circumstances.  But to the extent that police-officer training and experience shows that a motorist's blank stare is consistent with an impaired driving condition, Sergeant Illanz's observation here lent credence to the Speedway customer's report. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams*, 407 U.S. at 145, 92 S.Ct. 1921, 32 L.Ed.2d 612.

{¶ 47} Fifth, Sergeant Illanz effectuated the investigatory stop only after he watched the driver with a blank stare drive at an unusually slow speed toward Fields-Ertel Road, which was still busy with heavy traffic at that time of night.

Approximately 30 seconds elapsed between the time that Sergeant Illanz heard the Speedway customer yell to him and the time that he stopped the vehicle. It is undisputed that Sergeant Illanz stopped the vehicle because he believed there was a public-safety concern. Given the information then available to Sergeant Illanz, it was reasonable under the totality of the circumstances for him to approach the vehicle in this public area and briefly detain its driver in order to make a most basic inquiry as to whether an immediate danger to public safety existed.

{¶ 48} An investigatory traffic stop, such as the one that occurred here, is a brief, minimally intrusive response that enables a law-enforcement officer with at least reasonable suspicion that a crime is being or is about to be committed to obtain more information that can quickly confirm or dispel the officer's suspicion. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Adams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; *Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605. Indeed, a brief conversation with the target of a drunk-driving report could not only confirm or dispel the suspicion but could also provide information to support charges against the informant if the informant's report was knowingly false.

{¶ 49} In granting the motion to suppress, the trial court relied on the fact that there was no indication that Tidwell had driven erratically before Sergeant Illanz stopped her. In our view, this is immaterial in this case. Sergeant Illanz was advised face-to-face by a tipster that a person, whom Sergeant Illanz could reasonably assume had just interacted with the tipster inside the Speedway store, was drunk and was about to drive onto a busy street. Sergeant Illanz reacted to the information and observed Tidwell for 30 seconds before stopping her from leaving the parking lot. During that 30 seconds, Sergeant Illanz witnessed some indications of impaired driving—blank stare and slower driving than typical for the circumstances. Sergeant Illanz knew that if Tidwell was drunk, as the Speedway customer asserted, the danger she posed was real and immediate. In our view, the

circumstances provided Sergeant Illanz with reasonable suspicion to initiate the stop.

{¶ 50} To be sure, this tip, like the anonymous telephone tip in *J.L.* (that a young black man standing at a particular bus stop and wearing a plaid shirt was carrying a gun), *supra*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254, was to some extent a bare-bones assertion that identified the person the Speedway customer meant to accuse but did not divulge the informant's basis of knowledge or provide any predictive information. But unlike the telephone tip in *J.L.,* which a brief encounter with the subject of the tip would not by itself enable the officer to confirm or dispel, Sergeant Illanz's brief encounter with Tidwell immediately enabled him to confirm that Tidwell was operating a motor vehicle while intoxicated based on what he personally smelled, saw, and heard. The customer's face-to-face contemporaneous report of alleged criminal activity occurring right before Sergeant Illanz's eyes justified the investigatory response Sergeant Illanz took in this case.

{¶ 51} The court of appeals ruled that the unidentified Speedway customer's tip did not give Sergeant Illanz reasonable suspicion that Tidwell was committing a crime, because the tip did not provide any predictive information and did not contain any detail. 2019-Ohio-4493, ¶ 17. We readily acknowledge that particularized details and predictive information may increase a tip's indicia of reliability. *Compare White*, *supra*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301, *with J.L.*, *supra*. An informant's tip that a person is a drug dealer who has bundles of heroin packed in the trunk of his car has a greater indicia of reliability if the tipster provides particularized details and/or predictive information so as to allow law enforcement to better assess the informant's veracity, reliability, and basis of knowledge. By contrast, an informant's tip that a drunk person is starting her car and about to drive away concerns observable and well-recognized behavior that does not necessarily require details and/or predictive information.

{¶ 52} In the circumstances confronting Sergeant Illanz, he received a citizen report of an alleged crime in process—drunk driving—and made his own limited corroborating observation of the suspect before briefly detaining her. That the degree of reliability of the unidentified Speedway customer's tip cannot be quantified with mathematical precision does not mean that it lacked investigative value. Based on the totality of the circumstances then confronting the officer, we hold that his investigatory stop of Tidwell was reasonable and thus did not violate the Fourth Amendment to the United States Constitution.

## CONCLUSION

{¶ 53} In allowing investigatory detentions, "*Terry* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889] accepts the risk that officers may stop innocent people." *Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). "Indeed, the Fourth Amendment accepts the risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The *Terry* stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further." *Wardlow* at 126.

{¶ 54} In this case, Sergeant Illanz had reasonable suspicion to investigate whether Tidwell was driving while drunk based on the unidentified Speedway customer's tip and the officer's own partial corroboration of that tip. Considering the totality of the circumstances then confronting the officer, we hold that the brief investigatory stop of Tidwell was reasonable and thus did not violate the Fourth Amendment to the United States Constitution. We accordingly reverse the judgment of the First District Court of Appeals that upheld the trial court's suppression of evidence obtained following that investigatory stop, and we remand the cause to the Hamilton County Municipal Court for further proceedings.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, STEWART, and BRUNNER, JJ., concur.

————————————

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Melynda J. Machol and Philip R. Cummings, Assistant Prosecuting Attorneys, for appellant.

The Law Offices of Steven R. Adams, L.L.C., and Tad K. Brittingham, for appellee.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Stephen P. Carney, Deputy Solicitor General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

Timothy Young, Ohio Public Defender, and Marley C. Nelson, Assistant State Public Defender, urging affirmance for amicus curiae Office of the Ohio Public Defender.

————————————