[Cite as *State v. Tincher*, 2022-Ohio-1701.]

STATE OF OHIO     )           IN THE COURT OF APPEALS
                       )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA     )

STATE OF OHIO                          C.A. No.      21CA0060-M

     Appellant

     v.                                APPEAL FROM JUDGMENT
                                    ENTERED IN THE
ALLISON E. TINCHER             MEDINA MUNICIPAL COURT
                                    COUNTY OF MEDINA, OHIO
     Appellee                    CASE No.      21 TRC 01697

## DECISION AND JOURNAL ENTRY

Dated: May 23, 2022

HENSAL, Judge.

{¶1} Appellant, the State of Ohio, appeals from the decision of the Medina Municipal Court, granting a motion to suppress filed by Appellee, Allison Tincher. This Court reverses.

I.

{¶2} Shortly before 10:00 p.m. one Friday night, E.F. called 911 to report a possible drunk driver. E.F. identified herself as a "DoorDasher," and her name and telephone number appeared on the dispatcher's caller identification display. E.F. reported that a woman who was "stumbling all over the place" had just exited a bar and was driving away in her car. E.F. gave the dispatcher the name and location of the bar, the license plate of the woman's car, the road on which the car was traveling, and the direction the car was heading. Almost immediately after she ended her call with the dispatcher, E.F. called 911 again to report that the car had entered a Taco Bell.

{¶3} Unbeknownst to the dispatcher, E.F. did not personally observe the woman she called 911 to report. E.F.'s boyfriend saw the woman come out of the bar, stumble, and get into

her car while he and E.F. were talking on their cell phones. E.F. ended her call with her boyfriend so that she could call 911. While E.F. was on the phone with the dispatcher, her boyfriend sent her text messages with additional information that she passed along to the dispatcher. The police later spoke with both E.F. and her boyfriend to obtain a written statement.

{¶4} The 911 dispatcher relayed the information she received from E.F. to Officer Erica Anderson. Officer Anderson found the car E.F. had described in the drive-thru lane at Taco Bell and waited in an adjacent parking lot. She watched as the car pulled through the lane, out of the parking lot, and back onto the roadway. While she did not observe any traffic infractions in the short amount of time she followed the car, Officer Anderson executed a traffic stop based on E.F.'s tip. Her interaction with the driver, Ms. Tincher, led to Ms. Tincher's arrest.

{¶5} Ms. Tincher was charged with one count of operating a vehicle under the influence of alcohol. She moved to suppress the evidence against her on several grounds, one of which was that Officer Anderson lacked reasonable suspicion to stop her car. The trial court held a suppression hearing and ultimately granted Ms. Tincher's motion to suppress on the foregoing basis.

{¶6} The State now appeals from the trial court's suppression ruling in favor of Mr. Tincher and raises one assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN THE ACTING JUDGE GRANTED DEFENDANT-APPELLEE'S MOTION TO SUPPRESS WHEN IT APPLIED AN IMPROPER STANDARD TO EVALUATE WHETHER INFORMATION FROM AN IDENTIFIED CITIZEN INFORMANT GAVE RISE TO REASONABLE, ARTICULABLE SUSPICION FOR A TRAFFIC STOP.

**{¶7}** In its sole assignment of error, the State argues that the trial court erred when it granted Ms. Tincher's motion to suppress. The State argues that the tip the police received from E.F., when combined with the totality of the circumstances, provided Officer Anderson with reasonable suspicion to execute a traffic stop. According to the State, the trial court neglected to apply the Ohio Supreme Court's most recent decision on the issue, *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072. For the following reasons, this Court sustains the State's assignment of error.

**{¶8}** A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *Id.* "Accordingly, this Court grants deference to the municipal court's findings of fact but conducts a de novo review of whether the court applied the appropriate legal standard to those facts." *State v. Snowberger*, 9th Dist. Summit No. 29853, 2022-Ohio-279, ¶ 5.

**{¶9}** "[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7. The officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *State v. Jenkins*, 9th Dist. Lorain No. 15CA010826, 2016-Ohio-5190, ¶ 6, quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). If the police obtained information by way of a tip, reasonable suspicion must be examined in light of "the weight and reliability due that tip." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999). *Accord Alabama v. White*, 496

U.S. 325, 330 (1990). A court must consider "the totality of the circumstances as they were known to [the police] prior to the time [the police] stopped [the defendant], together with reasonable inferences that could be drawn from the circumstances, keeping in mind that each piece of information may vary greatly in its value and degree of reliability." *Tidwell* at ¶ 40.

{¶10} In examining the reliability of an informant's tip, "many courts * * * have found it useful to place the informant into one of three categories: (1) anonymous informant, (2) known informant (someone from the criminal world who has provided previous reliable tips), and (3) identified citizen informant." *Id.* at ¶ 29. Tips offered by anonymous informants "generally require independent police corroboration" while tips offered by identified citizen informants may be considered "highly reliable" without "a strong showing as to other indicia of reliability * * *." *Maumee* at 300. Importantly, however, "categorical classifications of informants * * * are not necessarily outcome determinative." *Tidwell* at ¶ 39. "Instead [they are] one element of [a] totality of the circumstances review of [an] informant's tip, weighing in favor of the informant's reliability and veracity." *Maumee* at 302. A non-exhaustive list of other considerations includes whether the tipster personally observed the crime being reported, whether the tipster identified himself or herself, whether the tipster used the 911 emergency system, whether the tip was about a past or presently occurring crime, whether the tip contained particularized details and predictive information, and any motivation the tipster may have had in conveying the tip. *See Navarette v. California*, 572 U.S. 393, 399-401 (2014); *Tidwell* at ¶ 44, 51; *Maumee* at 302.

{¶11} The trial court made each of the following factual findings. Around 10:00 p.m. on a Friday night, Officer Anderson received a dispatch while she was on patrol in her marked cruiser. Dispatch alerted the officer that a female tipster had called 911 to report "a female stumbling all over the place" in the parking lot of a bar and getting into the driver's seat of a car. The tipster

identified the car by color and license plate number. She also called 911 a second time to report that the vehicle had stopped at the Taco Bell across the street from the bar. Each time the female tipster called, her name and phone number appeared on the 911 dispatcher's "call screen." Officer Anderson specifically asked the dispatcher whether she had contact information for the tipster, and the dispatcher confirmed that she had the female tipster's name and phone number.

{¶12} The trial court found that Officer Anderson drove to the Taco Bell and spotted the car in question in the drive-thru lane. Officer Anderson parked in an adjacent lot and waited for the car to exit the drive-thru lane. She watched the car advance through the line, exit the parking lot, and turn onto two different streets. During that time, the driver of the car did not commit any traffic violations or give any other indications of impaired driving. Officer Anderson executed a traffic stop shortly thereafter.

{¶13} The trial court found that, at the time of the stop, neither the dispatcher, nor Officer Anderson were aware that the female tipster (E.F.) had not personally witnessed the events she had described. Instead, her boyfriend had witnessed the events, he had communicated that information to E.F., and she had relayed that information to the 911 dispatcher. The police later spoke with E.F. and her boyfriend, and both individuals testified at the suppression hearing.

{¶14} The trial court determined that E.F. qualified as an identified citizen informant because she identified herself to the dispatcher and the dispatcher conveyed her information to Officer Anderson. Nevertheless, the court was troubled by the fact that E.F. had not personally observed the events she described. It found her tip less reliable because she had received information second-hand from her boyfriend before relaying it to the dispatcher. The court also noted that E.F.'s tip did not concern any erratic driving. She only reported that the driver had stumbled in the parking lot; a fact that, in the trial court's opinion, also detracted from the weight

to be given her tip. The trial court concluded that E.F.'s tip "fell short of providing reasonable and articulable suspicion for the stop of [Ms. Tincher's] vehicle." Further, it found that Officer Anderson never observed any traffic violations or other signs of erratic driving that otherwise might have supplied reasonable suspicion for the stop she executed. Because the court determined that the stop was not justified, it granted Ms. Tincher's motion to suppress.

{¶15} The State has not challenged any of the trial court's factual findings, and our review of the record supports the conclusion that those findings are based on competent, credible evidence. Accordingly, this Court accepts those findings as true. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. We limit our discussion to the State's argument that the trial court erred when it determined that Officer Anderson lacked reasonable suspicion to execute an investigatory stop. *See id.*; *Snowberger*, 2022-Ohio-279, at ¶ 5.

{¶16} As previously noted, tips received from identified citizen informants are usually considered "highly reliable" without "a strong showing as to other indicia of reliability * * *." *Maumee*, 87 Ohio St.3d at 300. Although the trial court found that E.F. was an identified citizen informant, it refused to consider her tip highly reliable. That is because she did not witness the events she reported. E.F.'s boyfriend was the eyewitness, and E.F. merely shared information she received from him with the 911 dispatcher. The trial court specifically acknowledged, however, that neither the dispatcher, nor Officer Anderson were aware of that fact at the time of the investigatory stop. That fact came to light when the police later contacted E.F. for a written statement. In finding that E.F.'s lack of personal knowledge impacted the reliability of her tip, the trial court improperly considered information beyond that known to the dispatcher and communicated to Officer Anderson at the time of his investigatory stop. *See Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, at ¶ 40 (analysis of reasonableness of investigatory stop requires court

to consider totality of the circumstances as they were known to the investigating officer prior to the time of the investigatory stop); *Maumee* at 299 (court must assess whether facts known to dispatcher were sufficient to justify investigatory stop). Moreover, the court failed to take into account several other factors lending credence to the weight and reliability of E.F.'s tip.

**{¶17}** It is undisputed that E.F. shared her tip with the police via the 911 emergency system and called 911 a second time when she had additional information to share. A tipster's use of the 911 emergency system is an "indicator of veracity" because 911 calls have "some features that allow for identifying and tracing callers * * *." *Navarette*, 572 U.S. at 400. E.F. made no attempt to block her number or hide her identity from the dispatcher. Each time she called, the dispatcher observed her name and phone number on the system's "call screen." Moreover, before stopping Ms. Tincher, Officer Anderson verified with the dispatcher that she had obtained E.F.'s contact information. While 911 calls are not "per se reliable[,] * * * a reasonable officer could conclude that a false tipster would think twice before using such a system." *Id.* at 401. E.F.'s willingness to use the 911 emergency system was an indicia of reliability.

**{¶18}** Another factor tending to show that E.F.'s tip was reliable was that her tip suggested knowledge of Ms. Tincher's present condition and pertained to circumstances occurring immediately before and contemporaneous with her 911 call. *See Tidwell* at ¶ 44-45; *Maumee* at 302. E.F. was not describing a past event or predicting some future event. She contacted 911 with the expectation that the police would immediately act upon her tip and stop a crime that was currently in progress. Both the immediacy of her tip and the fact that it described a presently occurring situation "gave the tip a further degree of trustworthiness." *Tidwell* at ¶ 45. *Accord Maumee* at 302.

**{¶19}** The record also supports the conclusion that, in reporting Ms. Tincher, E.F. was not motivated "by dishonest and questionable goals, but by [her] desire to eliminate a risk to the public's safety." *Maumee* at 302. E.F. called 911 because Ms. Tincher was "stumbling all over the place" in the parking lot of a bar before she began operating her car. "We can reasonably infer from these circumstances that [E.F.] considered [Ms. Tincher] a threat to * * * other motorists * * *." *Id.* The altruistic nature of her tip was an additional factor in favor of its reliability. *See id.* Moreover, the fact that Ms. Tincher did not display any signs of impaired driving during the short time Officer Anderson followed her car is inapposite. "It is hardly surprising that the appearance of a marked police car would inspire more careful driving for a time[,]" and an officer need not allow a potential drunk driver to continue operating his or her car once reasonable suspicion of drunk driving arises. *Navarette* at 403.

**{¶20}** The totality of the circumstances, together with reasonable inferences that could be drawn therefrom, support the conclusion that Officer Anderson was justified in conducting an investigatory traffic stop to confirm or dispel the suspicion that Ms. Tincher was driving while intoxicated. *See Tidwell* at ¶ 40, 48. Both the 911 dispatcher and Officer Anderson were aware of E.F.'s identity,[1] making her tip more reliable. *See Maumee* at 300; *State v. Woody*, 9th Dist.

---

[1] Ms. Tincher has suggested that E.F. should be considered an anonymous informant because she never gave her name to the dispatcher. Rather, the dispatcher automatically obtained E.F.'s contact information from her "call screen." The Ohio Supreme Court has recognized that "[c]ourts have been lenient in their assessment of the type and amount of information needed to identify a particular informant." *Maumee* at 301. It is undisputed that both the dispatcher and Officer Anderson were aware of E.F.'s name and phone number. The dispatcher never asked E.F. for her name (presumably because it appeared on the dispatcher's screen), so there is no suggestion in the record that E.F. purposely concealed it. In fact, when the police later used E.F.'s number to contact her, she provided the police with her boyfriend's name and contact information so that they could obtain a written statement from him. Even if E.F. did not initially provide her name to the police herself, the information the dispatcher obtained from the 911 emergency system "was sufficient to identify [E.F.] and remove [her] from the anonymous informant category." *Id.* at 301-302. As such, we reject Ms. Tincher's argument to the contrary.

Lorain No. 14CA010679, 2016-Ohio-631, ¶ 11. Further, her tip bore several other indicia of reliability. *See Maumee* at 299. Officer Anderson immediately responded to E.F.'s tip and located Ms. Tincher's vehicle exactly where E.F. had reported that the vehicle would be (i.e., in the drive-thru lane at Taco Bell). It was late on a Friday evening, and Ms. Tincher had just been seen "stumbling all over the place" in the parking lot of a bar. Given the foregoing, we must conclude that the trial court erred when it determined that Officer Anderson lacked reasonable suspicion to execute an investigatory stop of Ms. Tincher's car. Accordingly, the State's sole assignment of error is sustained.

III.

{¶21} The State's sole assignment of error is sustained. The judgment of the Medina Municipal Court is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

GREGORY A. HUBER, J. MATTHEW LANIER, MEGAN A. PHILBIN, and ROBERT B. CAMPBELL, Prosecuting Attorneys, for Appellant.

PATRICK D. QUINN and RONALD A. ANNOTICO, Attorneys at Law, for Appellee.