[Cite as *Cleveland v. Glover*, 2026-Ohio-1039.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114796 |
| v. | : | |
| TEASIA GLOVER, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 26, 2026

Criminal Appeal from the Cleveland Municipal Court
Case No. 2024-TRC-010011

***Appearances:***

Mark Griffin, Cleveland Director of Law, Aqueelah Jordan, Chief Prosecutor, and Angel Sanchez, Assistant Prosecuting Attorney, *for appellee*.

FG+G LLC and Alex Ugolini, *for appellant*.

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Teasia Glover ("Glover") appeals the Cleveland Municipal Court's ("trial court") order denying her motion to suppress alcohol-test results. The trial court's denial of Glover's motion to suppress is affirmed.

## I. Relevant Facts and Procedural History

{¶ 2} This case stems from a traffic stop that occurred on June 19, 2024, on State Route 176 at 2:19 a.m. Ohio State Highway Patrol Trooper Mykol Gardiner ("Trooper Gardiner") observed a gray Hyundai traveling 71 m.p.h. in a 60 m.p.h. zone and cross over the left fog line by a tire's width three times. In addition, when Trooper Gardiner initiated a traffic stop, the gray Hyundai struck the curb as it pulled over.

{¶ 3} Trooper Gardiner approached the vehicle and found Glover was the driver. Trooper Gardiner could smell a strong odor of an alcoholic beverage coming from inside the vehicle, and he observed that Glover's eyes were red and glossy. Glover admitted to drinking one "lemon drop drink" in the downtown Cleveland area. Glover consented to submit to Standardized Field Sobriety Tests ("SFSTs"). Trooper Gardiner observed clues of impairment on two of three SFSTs. Glover was placed under arrest and submitted an alcohol-test breath sample of .093 g/210L, which is over the legal limit.

{¶ 4} Glover was subsequently issued a citation for operating a motor vehicle while under the influence of alcohol or drugs pursuant to R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d) and for marked lanes violations pursuant to R.C. 4511.33.

{¶ 5} Glover filed a motion to suppress the results of the alcohol-test breath results. On October 22, 2024, the trial court held a hearing on Glover's motion to suppress. The sole issue at the suppression hearing was whether the dry gas standard used in the Intoxilyzer 8000, the machine used to return Glover's breath

test result, was traceable to the National Institute of Standards and Technology ("NIST"), as required by the Ohio Administrative Code. Trooper Gardiner testified at the hearing that the Intoxilyzer 8000 machine used to test Glover was in working order and had been certified by the State of Ohio.

{¶ 6} The City of Cleveland ("City") introduced the dry gas supplier's certificate of analysis of the dry gas batch used in the Intoxilyzer 8000 machine. On the bottom of the certificate is the following language: "The calibration results within this certificate were obtained at the facility listed above using equipment and standards capable of producing results traceable to NIST."

{¶ 7} On November 19, 2024, the trial court denied Glover's motion to suppress. On January 9, 2025, Glover entered no-contest pleas to two counts of operating a motor vehicle while under the influence of alcohol or drugs pursuant to R.C. 4511.19(A)(1)(a) and (d). The trial court found her not guilty of R.C. 4511.19(A)(1)(a) and guilty of R.C. 4511.19(A)(1)(d). The trial court sentenced Glover to six months of community control, a $75 fine, court costs, and a 20-day suspended sentence.

{¶ 8} The transcript of the suppression hearing was not available. A proposed statement of evidence pursuant to App.R. 9(C) was certified and sent by the trial court.

{¶ 9} Glover raises the following assignment of error for our review:

The trial court erred in denying Appellant's motion to suppress the results of the Intoxilyzer 8000 breath test where the State failed to

establish substantial compliance with Ohio Adm.Code Chapter 3701-53.

## II. Law and Analysis

{¶ 10} In her sole assignment of error, Glover asserts that the trial court erred when it denied her motion to suppress the results of the Intoxilyzer 8000 breath test. Glover specifically asserts that the City did not establish that the breath-testing instrument used in this case was certified to be in substantial compliance with the Ohio Administrative Code.

{¶ 11} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Tidwell*, 165 Ohio St.3d 57, 60 (2021), citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "The appellate court must decide questions of law de novo, without deference to the lower court's legal conclusions." *Id.*, citing *Burnside* at ¶ 8.

{¶ 12} Pursuant to R.C. 4511.19(A):

(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

. . .

(d) The person has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath.

{¶ 13} R.C. 4511.19(D) governs the admissibility of alcohol-test results and states, in relevant part, that a defendant's blood, breath, or urine "shall be analyzed

in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code." Further, R.C. 3701.143 requires the director of health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's blood."

{¶ 14} Instruments approved by the Ohio Department of Health for breath testing are listed in Adm.Code 3701-53-03 and lists the Intoxilyzer model 8000 as an approved instrument. The Intoxilyzer model 8000 was used in this case. Guidelines for breath-instrument checks, controls and certifications are set forth in Adm.Code 3701-53-05.[1] The guidelines for the Intoxilyzer model 8000 are as follows:

> (B) For the instrument listed under paragraph (A)(3) of rule 3701-53-03 of the Administrative Code:
>
> (1) *The instrument shall perform a dry gas control using a dry gas standard traceable to the national institute of standards and technology (NIST) before and after every subject test.*
>
> (2) A subject test shall include the collection of two breath samples. A dry gas control is not required between the two breath samples.
>
> (3) Dry gas control results are valid when the results are at or within five one-thousandths (0.005) grams per two hundred ten liters of the alcohol concentration on the manufacturer's certificate of analysis for that dry gas standard.

---

[1] Glover's appellate brief cites to a former version, Adm.Code 3701-53-04(B). The current version, cited here, was in effect at the time of Glover's traffic stop.

(4) A dry gas control result which is outside the range specified in paragraph (B)(3) of this rule will abort the subject test or instrument certification in progress.

(5) A representative of the director will perform an instrument certification according to the instrument display using a solution containing ethyl alcohol approved by the director. *A dry gas control using a dry gas standard traceable to the national institute of standards and technology (NIST) shall also be used when a certification is performed.* An instrument in service shall be certified no less frequently than once every calendar year or when the dry gas standard on the instrument is replaced, whichever comes first. A calendar year means the period of twelve consecutive months, as indicated in section 1.44 of the Revised Code, beginning on the first day of January, and ending on the thirty-first day of December. Instrument certifications are valid when the certification results are at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that approved solution. Instruments with certification results outside the range specified in this paragraph will require the issue to be remediated and a successful certification completed, or the instrument be removed from service until the instrument is serviced or repaired.

(Emphasis added.)

{¶ 15} Rigid compliance with the Ohio Department of Health regulations is not required. *State v. Plummer*, 22 Ohio St.3d 292, 294 (1986). When the admissibility of alcohol-test results is challenged, the City bears the burden of showing substantial compliance with R.C. 4511.19(D)(1) and Adm.Code 3701-53. *See Burnside*, 2003-Ohio-5372, at ¶ 24-27. The alcohol-test result is presumed admissible if the City meets the burden of going forward with evidence demonstrating substantial compliance, and the burden shifts to the defendant "to rebut the presumption by demonstrating prejudice from the state's failure to strictly

comply with the applicable regulations in the Ohio Administrative Code." *State v. Baker*, 2016-Ohio-451, ¶ 23.

{¶ 16} Glover contends that this court should follow *State v. Farrell*, 2021-Ohio-1554 (6th Dist.), and *State v. Dye*, 2021-Ohio-3513 (6th Dist.). In both *Farrell* and *Dye*, the court found that the city failed to meet its burden of showing substantial compliance with the administrative code where the certificate of analysis presented as evidence of compliance showed that the certification was traceable to National Metrology Institute Traceable Standards ("NMI"). The question before the court was "whether traceability to [NMI] is substantially the same as traceability to NIST standards." *Farrell* at ¶ 26. The court found that traceability to an unnamed NMI's standard does not establish traceability to NIST standards and thus the City failed to meet its burden to show substantial compliance. The certificate of analysis in this case clearly states the dry-gas analysis "standards capable of producing results traceable to NIST." Thus, *Farrell* and *Dye* are not applicable to this case.

{¶ 17} The trial court properly denied Glover's motion to suppress because the breath-test results were admissible. The City met its burden of demonstrating substantial compliance with Adm.Code 3701-53-05 when it introduced the dry gas supplier's certificate of analysis showing traceability to NIST standards. *See State v. Murphy*, 2023-Ohio-1419, ¶ 30 (6th Dist.). Glover has not rebutted the presumption that the breath-test results were admissible.

{¶ 18} We decline to address Glover's additional contentions that the alcohol-test results were otherwise inadmissible. Glover contends that the test was

also inadmissible because Trooper Gardiner testified that he had never seen the certificate of analysis for the dry gas used in the instrument, did not know whether the lot or batch numbers matched the gas used during Glover's test, was unfamiliar with the origin, manufacturer, or chain of custody of the dry gas, and had no understanding of how NIST traceability is determined. However, Glover has not provided any legal authority supporting her contention that the City did not substantially comply with the statute because Trooper Gardiner could not answer these questions or that his inability to answer these questions rebuts the presumption of admissibility.

{¶ 19} We find that Glover has not rebutted the presumption by demonstrating prejudice from the City's failure to strictly comply with the applicable regulations in the Ohio Administrative Code. Therefore, Glover's single assignment of error is overruled and the trial court's order denying Glover's motion to suppress is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR