[Cite as *State v. Tower*, 2025-Ohio-5593.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 CA 00021 |
| Plaintiff – Appellee/Cross-Appellant | Opinion and Judgment Entry |
| -vs- | Appeal from the Fairfield County Municipal Court, Case No. TRC 2407425 |
| JEFFREY TOWER | |
| Defendant – Appellant/Cross-Appellee | Judgment: Affirmed in part, reversed in part, remanded for resentencing |
| | Date of Judgment Entry: December 16, 2025 |

**BEFORE:** William B. Hoffman, Kevin W. Popham, David M. Gormley, Appellate Judges

**APPEARANCES:** James E. Young, City of Lancaster Law Director & Prosecutor's Office, Assistant City Prosecutor, for Plaintiff-Appellee; Scott Wood, for Defendant-Appellant

OPINION

*Hoffman, P.J.*

**{¶1}** Plaintiff-appellant Jeffrey Tower appeals the judgment entered by the Fairfield County Municipal Court convicting him following his plea of no contest to operating a vehicle under the influence of alcohol (R.C. 4511.19(A)(1)(i) (hereinafter "OVI")) and sentencing him to 180 days in the county jail with 128 days suspended. The trial court ordered Appellant to serve ten days in jail, and upon his release to serve thirty-six days of house arrest. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** At 6:15 p.m. on November 26, 2024, the Lancaster Police Department received a 911 call. The caller identified herself as Destiny, a Taco Bell employee. Although Destiny gave the dispatcher her last name, the dispatcher was unsure of the spelling and therefore did not attempt to write Destiny's last name in the report. Destiny was calling from a cell phone, which the dispatcher could track as physically located at the Taco Bell restaurant.

**{¶3}** Destiny reported a man was in the restaurant drive-thru with an open container of alcohol between his legs. The man was driving a white four-door vehicle, possibly a Honda. The driver was yelling inside his vehicle and smacking the steering wheel. The dispatcher immediately sent police to the scene and asked Destiny to attempt to keep the man in the drive-thru. Upon learning his food order would be delayed, the man became even more upset and drove away.

{¶4} While still on the phone with the dispatcher, Destiny observed the man drive to a neighboring White Castle restaurant. Destiny remained on the phone with dispatch for one to two minutes until police arrived at the White Castle restaurant.

{¶5} Officer Samuel Evans of the Lancaster Police Department responded to the call. He noticed a silver four-door Honda was the last vehicle in the White Castle drive-thru lane. Officer Evans circled the lot to determine if any other vehicles in the lot matched the description Destiny gave the dispatcher of the suspect vehicle. Seeing none, and noting the driver of the silver Honda had his head down as if possibly passed out or asleep, Officer Evans pulled behind the silver Honda and activated his overhead lights to effectuate a traffic stop.

{¶6} Upon approaching the vehicle, the driver, who was later determined to be Appellant, was awake. Appellant was charged with two counts of OVI in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(i)(prohibited urine alcohol content). He filed a motion to suppress, arguing the officer did not have a reasonable and articulable suspicion of criminal activity to justify stopping his vehicle. Following a hearing, the trial court overruled the motion.

{¶7} Appellant entered a plea of no contest to the charge of OVI in violation of R.C. 4511.19(A)(1)(i) and the State dismissed the remaining charge of OVI. The trial court convicted Appellant upon his plea and sentenced him to 180 days in the county jail, with 128 days suspended and credit for six days served. As to the remaining forty-six days, the trial court ordered Appellant to serve ten days in jail, and upon his release to serve thirty-six days of house arrest.

**{¶8}** It is from the May 1, 2025, judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

**{¶9}** The State has filed a cross-appeal, assigning as error:

I. THE TRIAL COURT ERRED WHEN IT IMPOSED THE ALTERNATIVE MINIMUM SENTENCE FOR A HIGH TEST, SECOND OFFENSE OVI IN TEN YEARS UNDER R.C. 4511.19(A)(1)(i).

II. THE TRIAL COURT ERRED WHEN IT GAVE CROSS-APPELLEE JAIL-TIME CREDIT FOR THE DAYS HE WAS TO SERVE ON HOUSE ARREST (HAEM).

**{¶10}** We first address Appellant's assignment of error on direct appeal.

I.

**{¶11}** Appellant argues the trial court erred in overruling his motion to suppress because Destiny was not a reliable citizen informant. He argues even if the trial court did not err in finding Destiny to be a reliable citizen informant, the trial erred in finding the stop was supported by a reasonable, articulable suspicion of criminal activity because his car was not the same color reported by Destiny. We disagree.

{¶12} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 1995-Ohio-243; *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside* at ¶ 8. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *Id., citing State v. McNamara,* 124 Ohio App.3d 706, 707 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266 (2002); *Ornelas v. United States,* 517 U.S. 690 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas* at 697. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 698.

{¶13} The Fourth Amendment permits brief investigative stops when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-418 (1981); *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White,* 496 U.S. 325, 330 (1990). The reasonableness of an investigatory stop is determined by considering the totality of the circumstances as they were known to the officer prior to the stop, together with reasonable inferences which could be drawn from the circumstances, bearing in mind

each piece of information may vary greatly in its value and degree of reliability. *State v. Tidwell*, 2021-Ohio-2072, ¶ 40.

**{¶14}** The United States Supreme Court has "firmly rejected the argument 'that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person.'" *Navarette v. California,* 572 U.S. 393, 397 (2014), *quoting Adams v. Williams*, 407 U.S. 143, 147 (1972). However, the United States Supreme Court has acknowledged "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," because "ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations," and an anonymous tipster's veracity is "by hypothesis largely unknown, and unknowable." *White*, 496 U.S. at 329.

**{¶15}** When "the information possessed by the police before the stop stems solely from an informant's tip, the determination of reasonable suspicion is limited to an examination of the weight and reliability due that tip." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999). "The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id*. Factors considered highly relevant in determining the value of the tip are the informant's veracity, reliability, and basis of knowledge. *Id*.

**{¶16}** Ohio courts have recognized three categories of informants: (1) anonymous informants, (2) known informants (someone from the criminal world who has provided previous reliable tips), and (3) identified citizen informants. *Id*. at 300. An anonymous informant is comparatively unreliable and his or her tip will therefore generally require independent police corroboration. *Id*. The identified citizen informant is accorded a greater

degree of reliability. *Id*. Tips offered by identified citizen informants may be considered "highly reliable" without "a strong showing as to other indicia of reliability[.]" *Id*.

**{¶17}** The categorization of the informant is not outcome-determinative and instead is only one element of the totality of the circumstances analysis. *Id*. at 302. "A non-exhaustive list of other considerations includes whether the tipster personally observed the crime being reported, whether the tipster identified himself or herself, whether the tipster used the 911 emergency system, whether the tip was about a past or presently occurring crime, whether the tip contained particularized details and predictive information, and any motivation the tipster may have had in conveying the tip." *State v. Tincher*, 2022-Ohio-1701, ¶ 10 (9th Dist.).

**{¶18}** In *State v. Wolfe*, 2025-Ohio-2096, ¶ 16 (5th Dist.), this Court found a police officer had a reasonable and articulable suspicion of criminal activity to stop a vehicle based solely on an identified citizen's tip:

> In the instant case, we find the trial court did not err in concluding Deputy Cline had reasonable suspicion to conduct an investigatory stop. The information Deputy Cline received via the CAD system in his cruiser was provided by an identified citizen informant, Ross Cameron, who gave his name, phone number, and address to personnel at the Delaware County Sheriff's Office. Cameron described Appellant's vehicle including the license plate number, the roads on which Appellant was traveling, and the direction in which Appellant was traveling. Cameron detailed Appellant's reckless driving as he observed it in real time. He continued to update the

location of Appellant's vehicle. Cameron stayed in the area until Deputy Cline arrived and identified the vehicle for the deputy. Contrary to Appellant's assertion, she was not pulled over by Deputy Cline based upon an anonymous tip.

{¶19} Similarly, in the instant case, we find the information was provided by an identified citizen informant. The informant identified herself as Destiny and gave her last name, although the dispatcher did not know how to spell Destiny's last name and did not put it in the report. Destiny identified herself as a Taco Bell employee, and the dispatcher confirmed the cell phone from which the call was placed was physically located at the Taco Bell restaurant. Destiny reported her real time observations of Appellant's behavior in the restaurant's drive-thru lane, as well as her observation he had what appeared to be an open container of alcohol between his legs while driving the car. She reported Appellant left the Taco Bell drive-thru despite employees' attempts to detain him to wait for his order and drove to the White Castle drive-thru. Destiny was able to observe the White Castle parking lot and stayed on the line with the dispatcher until officers arrived.

{¶20} Appellant emphasizes the vehicle stopped by Officer Evans was a silver four-door Honda, while Destiny described the vehicle as a white four-door Honda. We find the slight difference in the color of the vehicle did not render the tip unreliable. Officer Evans circled the parking lot before stopping Appellant to be sure there was not a white vehicle matching the description given by Destiny. Although Destiny did not confirm police had stopped the correct vehicle, she also did not tell the dispatcher police had the wrong vehicle, nor did she report Appellant had left the White Castle drive-thru while she

waited for police to arrive.  Police were given no information which would suggest the silver Honda was not the same car reported by Destiny, and aside from the slight difference in color, the car otherwise matched the description of the vehicle and its location.

{¶21}  We find the trial court did not err in finding Officer Evans had a reasonable and articulable suspicion of criminal activity to stop Appellant's vehicle.  Appellant's assignment of error is overruled.

{¶22}  We next address the State's assignments of error on cross-appeal.

I.

{¶23}  In its first assignment of error on cross-appeal, the State argues the trial court erred in sentencing Appellant to the alternative minimum sentence.  We agree.

{¶24}  Pursuant to R.C. 4511.19(G)(1)(b)(ii), when the trial court imposes a sentence for a violation of R.C. 4511.19(A)(1)(i) and the offender has been convicted of an OVI offense in the previous ten years, as Appellant has in this case, the trial court must sentence the offender to a mandatory jail term of at least twenty consecutive days.  However, this is subject to R.C. 4511.19(G)(3), which provides:

> If an offender is sentenced to a jail term under division (G)(1)(b)(i) or (ii) or (G)(1)(c)(i) or (ii) of this section and if, within sixty days of sentencing of the offender, the court issues a written finding on the record that, due to the unavailability of space at the jail where the offender is required to serve the term, the offender will not be able to begin serving that term within the sixty-day period following the date of sentencing, the court may impose an

alternative sentence under this division that includes a term of house arrest with electronic monitoring, with continuous alcohol monitoring, or with both electronic monitoring and continuous alcohol monitoring.

**{¶25}** In the instant case, the trial court indicated at the sentencing hearing an intention to sentence Appellant to ten days in jail, and upon release Appellant would immediately begin serving thirty-six days of house arrest. The State objected, noting alternative sentencing is only available in circumstances where jail space is unavailable. The trial court stated it still planned to proceed with alternative sentencing based on Appellant's health, and asked Appellant to provide the court with further information concerning his health conditions. In the sentencing entry, the trial court imposed a sentence of ten days in jail followed by thirty-six days of house arrest without making a finding of unavailability of jail space.

**{¶26}** We find the trial court erred in failing to impose twenty consecutive days of jail time as required by R.C. 4511.19(G)(1)(b)(ii). In order to impose an alternative sentence, R.C. 4511.19(G)(3) clearly provides the trial court must make a written finding "that, due to the unavailability of space at the jail where the offender is required to serve the term, the offender will not be able to begin serving that term within the sixty-day period following the date of sentencing." The trial court failed to make the requisite finding in the instant case.

**{¶27}** The first assignment of error on cross-appeal is sustained.

II.

{¶28}  In its second assignment of error on cross-appeal, the State argues the trial court erred in giving Appellant jail time credit in advance for the time served on house arrest.  Because we have found in the State's first assignment of error the trial court erred in imposing an alternative sentence which included house arrest, the State's second assignment of error on cross-appeal is moot.

{¶29} The judgments of the Fairfield County Municipal Court overruling Appellant's motion to suppress and convicting Appellant of OVI in violation of 4511.19(A)(1)(i) are affirmed.  The judgment of sentence is reversed, and this case is remanded for resentencing according to law, consistent with this Opinion.  Costs are assessed to Appellant.


By: Hoffman, P.J.

Popham, J. and

Gormley, J. concur